CASE 41—PETITION EQUITY—FEBRUARY 14.

# D. Harmon vs. Wilson, Hicks, &c.

# R. Harmon vs. Same.

APPEALS FROM FLEMING CIRCUIT COURT.

1. Where a bill is drawn by a person residing in Kentucky, and there is no proof showing where it was drawn, the presumption is that it was drawn in Kentucky; and, as the drawee resides in Cincinnati, it must be regarded as a foreign bill.

2. The protest of such bill by a notary public of Ohio, reciting that he had "notified the drawer and indorser thereof," in a specified manner, is, by the statutes of Ohio, *prima facie* evidence that notice was so given; and, by the Kentucky statute of 1864, the protest is entitled to the same effect here. (1 *O. Rev. Stat.*, 874; *Session Acts* 1863-4, *p.* 14.)

3. In a suit in equity where the protest was filed with the petition, and referred to as evidence, no bill of exceptions was necessary to make it part of the record, or to show that it was regarded as evidence.

W. H. CORD, for appellants, cited 8 *B. M.*, 169; 3 *B. M.*, 74;

D. Harmon vs. Wilson, Hicks, &c.   R. Harmon vs. Same.

9 *B. M.*, 237 ; 2 *Greenl., sec.* 171 ; 1 *B. M.*, 285, 322 ; 9 *B. M.*,
397 ; *Pars. Mer. L.*, 106 ; 3 *Dana*, 557 ; *Story on Bills, sec.* 369.

SIMPSON & SCOTT, on same side, cited *Story on Bills*, 369.

W. S. BOTTS, for appellees, cited *Smith's Mer. L.*, 203 ; 7
*Mon.*, 580 ; 2 *B. M.*, 263 ; 2 *Marsh.*, 152 ; 2 *Litt.*, 185 ; 1 *J. J.
M.*, 70 ; 10 *Peters*, 572 ; 2 *Howard*, 457.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT :

These causes having been consolidated by order of court, on
the appellant's motion, there was no error in trying both at the
same time, and pronouncing one judgment, had it correctly
defined the rights of each party ; but it was erroneous to pro-
nounce a joint judgment against Daniel Harmon and Robert
Harmon, when each, if liable at all, is liable upon two sepa-
rate bills of exchange, to one of which Daniel is no party, and
to the other Robert is no party ; besides, these bills are for
different sums.

The bill drawn by Daniel Harmon, dated July 2, 1860, at
90 days, payable to Wilson, Hicks & Kensey, for $5,714 63, ac-
cepted by Wm. M. Harmon, was taken up at maturity by the
payees, as evidenced by the following words written across its
face : " Paid by Wilson, Hicks & Kensey." Plaintiffs do not
aver that they immediately notified the drawer of its non-pay-
ment by the acceptor, but say they did so in a short time. It
is evident, from the nature of the transaction, that this bill was
made by Daniel Harmon as an accommodation drawer, known
to the drawees ; if, indeed, it was not made for their accommo-
dation as well as for that of the acceptor. In such case he
was entitled to due notice.

Wm. M. Harmon had arranged with the drawees to advance
on two thousand barrels of flour, and they were to have the
possession and management and sale of the flour. They
expected to be profited by way of storage, commission, &c.
This bill was drawn in order to raise the necessary means so
to be advanced on the flour ; therefore, it is but fair to presume
it was drawn as much for their accommodation as that of the
acceptor ; and this conclusion is greatly fortified by their sub-
sequent conduct ; for on the day it fell due, or the next day,

they took another acceptance from Wm. M. Harmon for $5,325, at 60 days; and on December 10, 1860, after this fell due, they purchased Wm. M. Harmon's land at $4,000, one third of which they retained as margin to cover losses on the flour. Flour still being dull and low, on January 28, 1861, they took another bill for $1,700, at 30 days, drawn by Robert Harmon, accepted by Wm. M. Harmon, as margin to cover further losses, &c. These circumstances, connected with the evidence of Lee, that he heard Wilson, one of the firm, say to Daniel Harmon, "We released you by taking an acceptance on your son-in-law (Robert Harmon) and William Harmon's land," leave but little room to doubt that Daniel Harmon was in fact released, even if he was not an accommodation party for Wilson, Hicks & Kensey; and it was erroneous to adjudge anything against him.

The bill for $1,700, dated January 28, 1861, at 60 days, drawn by Robert Harmon, payable to Wilson, Hicks & Kensey, addressed "To Wm. M. Harmon, Cincinnati, Ohio," does not designate the place where drawn; but evidence and circumstances in the case indicate that Robert Harmon was a resident of Kentucky; and as no proof indicates where the bill was drawn, the legal presumption is that it was drawn at the drawee's residence, and must be regarded as a foreign bill of exchange, being drawn in one State on a person in another State, and the notarial protest is evidence of its dishonor. The notary certifies that he deposited notices addressed to Robert Harmon, Sherburn, Fleming county, Kentucky, in the post-office at Cincinnati, postage paid, the same day of the protest; and other evidence shows that Robert Harmon got notice of protest, for he spoke of having notice of protest to other persons. That he had due notice of protest and non-payment we think should be regarded as established, *prima facie*, until rebutted by evidence, which is not done.

Fifty acres of the land purchased by Wilson, Hicks & Kensey from Wm. M. Harmon, having been sold by judgment of court to satisfy a prior lien due by Harmon to the Todds, the value thereof should be deducted from the purchase price, and then a deduction should be made for Mrs. Harmon's contingent

right of dower, unless she shall voluntarily relinquish it, according to the principles decided at the present term in *Wilson, Hicks & Kensey vs. Dougherty et al.*, in a controversy about this same land. After thus ascertaining the amount due on this purchase of land by Wilson, Hicks & Kensey from W. M. Harmon, and allowing credit therefor on W. M. Harmon's account with Wilson, Hicks & Kensey, they will be entitled to judgment over against said William M. Harmon and Robert Harmon to not exceeding the amount of said bill of exchange, interest, and costs thereon, and for any remaining sum against Wm. M. Harmon alone.

Wherefore, the judgment is reversed, with directions to the court below to dismiss the petition against Daniel Harmon absolutely, and for further proceedings against Wm. M. Harmon and Robert Harmon as herein indicated.

---

To a petition for rehearing filed by L. M. Cox and A. DUVALL,

JUDGE WILLIAMS delivered the following response:

As was said in the opinion, the bill of exchange sued on was payable in Cincinnati. The protest of the Ohio notary public, who demanded the payment of the bill, is made part of the petition and filed with it. This protest recites, after protesting for non-payment, that the notary "notified the drawee and indorsees thereof, by written notice, as follows: Robert Harmon one notice, directed to him at Sherburn, Fleming county, Kentucky, * * * and deposited said notices in the post-office in this city this day, postage paid."

The only response of Robert Harmon as to notice, is, that "he never had due notice, or any notice at all, of the protest thereof." This is a mere denial that he ever received the notice, but does not controvert the facts stated by the notary, that he had protested the bill for non-payment, and had that day deposited a written notice thereof in the post-office in Cincinnati, postage paid, addressed to Robert Harmon, Sherburn, Fleming county, Kentucky.

If notice be properly addressed and deposited in the post-

office, this will be deemed due diligence, and the party will not be held responsible for the miscarriage of the mails. (1 *Parson on Notes and Bills.* 478, *and numerous authorities referred to in note v.*) Regarding the strong tendency of more modern times, both legislative and judicial, to relax the rigid rules of the past as to notice, and the great propriety of recognizing as an official act of the notary the depositing of notices in the post-office, thereby benefiting the parties, who are to be charged, by an earlier notice than they would likely otherwise get, we are strongly inclined to regard the statements of such facts in the notarial protest, when it is made part of and filed with the petition, as material and to be taken as confessed, unless controverted by the answer, and further proof as unnecessary.

But this is not the only ground upon which the decision may well be based. The Ohio Legislature has enacted that " the instrument of protest of the notary public, accompanying any bill of exchange or promissory note, which has been protested for non-acceptance or non-payment, shall be held and received in all courts of this State as *prima facie* evidence of the facts therein certified," subject to be contradicted by other evidence. (*Chap.* 75, *sec.* 10, 1 *vol. Ohio Rev. Stat., by Swan & Crutchfield, page* 874.)

By section 5, of an act approved January 16, 1864 (*Sess. Acts, p.* 14), our Legislature enacted " that when any bill of exchange, or other commercial paper, has heretofore, or shall hereafter, be protested in any other State of these United States, in which it is made payable, and by the laws of said State the notary public, or other officer legally authorized to protest the same, is required to give or send notice of the dishonor thereof to the parties, or when his certificate, or a copy thereof, that such notices were sent, is evidence thereof in the courts of such State, the same shall be received as evidence in all the courts of this Commonwealth, in all actions on such bills of exchange, and have the same effect as evidence, as is given to such evidence in the courts of such State."

Although we have found no judicial expounding of the Ohio statute by her courts, yet we cannot doubt, from the general terms used, that the statements that notice was given, and

the manner of giving contained in the protest, would be received by the courts of that State as *prima facie* evidence; indeed, we apprehend this was the controlling reason of the enactment, as the protest would be received as evidence of demand and dishonor by the commercial law and usage of the country. If this be the correct interpretation of the Ohio statute, our statute gives the same validity and effect to it in this State as it would be entitled to there.

This is a suit in equity; the protest was referred to as evidence and as a part of the petition. No bill of exceptions were necessary to make it a part of the record, or to show it was regarded as evidence.