CASE 43—PETITION EQUITY—SEPTEMBER 14.

# Emmerson's administrator v. Herriford.

APPEAL FROM HICKMAN CIRCUIT COURT.

1. AN ORDINARY JUDGMENT CAN ONLY BE ANNULLED OR MODIFIED BY A SUBSEQUENT PROCEEDING for some matter of defense which has arisen or been discovered since the judgment was rendered.

2. The defendant may after judgment, by appropriate suit, assert any cause of action he may have had against the plaintiff, notwithstanding the fact that he might have used such cause of action as a set-off or counter-claim to prevent the recovery against him, but failed to do so. (Chinn v. Mitchell, 2 Metcalfe, 92; Ross v. Ross, 3 Metcalfe, 274; Moss v. Rowland's executor, 1 Duvall, 321.)

3. A DEVASTAVIT MAY BE SHOWN WITHOUT A RETURN OF NULLA BONA.—If an executor or administrator has assets in his hands sufficient to pay a judgment when rendered ascertaining the amount of the demand against the estate, it is his duty to do so without awaiting the issual of an execution, and if he fails to do so, the creditor may proceed by an action on his bond without further proceedings upon the judgment. (Hobbs, &c. v. Middleton, 1 J. J. Marshall, 228; McCalla's administrator v. Patterson, 18 B. Monroe, 201; Lee v. Waller, 3 Metcalfe, 61.)

4. Without the return of a *nulla bona* upon the judgments against the administrator in this case, the plaintiff was entitled to a recovery on the administration-bond upon proof of assets in the hands of the administrator which should have been applied to the payment of said judgments.

5. *Property obtained fraudulently by the administrator from his intestate* before his death is subjected and held to be assets in the hands of the administrator.

W. R. BRADLEY, }
JOHN RODMAN, }            . .  . . . . . .  For Appellant,

. CITED

Revised Statutes, sec. 33, chap. 37, 1 Stanton, 509.
5 B. Monroe, 90, Sayre, administrator v. Lewis.
3 B. Monroe, 217.

WILLIAM LINDSAY, }
W. P. D. BUSH, . . }            . . . . . . . .  For Appellee,

CITED

Civil Code, sections 369–372, 574–585, 55, 56, 131.
Wentworth on Executors, pages 309, 310.
3 Metcalfe, 61, Lee v. Waller.
5 Bush, 187, Mason, &c. v. Mason, &c.
1 J. J. Marshall, 177, Hobbs & Churchill v. Middleton.
3 Bush, 353, Hackett v. Schad.
2 Williams on Executors, section 1802.
5 Dana, 406, Montmolin v. Gannt's administratrix.
5 Dana, 410, Pilkington's executor v. Gannt's adm'x.
2 Metcalfe, 92, Chinn v. Mitchell.
3 Metcalfe, 274, Ross v. Ross.
1 Duvall, 321, Moss v. Rowland's executor.
18 B. Monroe, 201, McCalla's administrator v. Patterson.
18 B. Monroe, 847, Kay v. Kean.

JUDGE HARDIN DELIVERED THE OPINION OF THE COURT.

In March, 1860, the appellant, Jesse Cook, as the adminis-
trator of John M. Emmerson, deceased, brought this suit in
equity for a settlement of the estate of his intestate, suggesting
the insufficiency of the personal assets to pay the debts of the
estate, and making the widow and the only heir of his intes-
tate, and the appellee Herriford and others, as creditors of
the decedent, defendants to the action.

Herriford appeared and filed an answer, which he made a
cross-petition against Cook and the sureties in his bond as
administrator, setting forth as debts against the estate, two
judgments which he had recovered in the Hickman Circuit
Court against Cook as administrator, to be levied of assets;
one of them for three hundred and ninety dollars, and the

other for sixty dollars; also a judgment which he had like-
wise recovered against said administrator in the Cumberland
Circuit Court for three thousand nine hundred dollars.   He
set forth the fiducial bond of Cook, and alleged as constituting
a devastavit on his part, and a consequent liability of his
sureties, that he had fraudulently failed to exhibit for ap-
praisement or to account for eight slaves of the estate, of the
value of eight thousand dollars, which came to his possession
as administrator, and were removed from this state, and sold
and converted by him to his own use.

The appellee further alleged that said administrator like-
wise fraudulently withheld, failed to account for, and converted
to his own use about six thousand dollars in gold and silver
coin and solvent bank-notes; also a note on M. L. Staver for
about six hundred dollars, with interest; also one half of a
debt of seven hundred and fifty dollars and interest on John
H. Byassee; also one half of certain notes on Mason Stacy,
amounting to about one thousand dollars; all of which came
to the administrator's hands as assets of the estate.   He also
alleged that Cook was a non-resident of this state; and he
sought a discovery of the whole amount of assets which came
to Cook's hands, and a recovery against him and his sureties
for the devastavit alleged.

By pleadings filed by Cook and his sureties, and Kate
Emmerson, the infant heir of J. M. Emmerson, acting by her
guardian ad litem, said judgments were assailed as invalid
and unjust, substantially on the following grounds:  As to
those obtained in the Hickman Circuit Court, it was alleged
that they were rendered for claims which had been fully
satisfied by Emmerson in his life-time by the sale of a gold
watch, a mule, and other property to Herriford, and these
facts being unknown to the administrator, he had failed to
defend the actions, and the plaintiff had therefore fraudulently
obtained the judgments.   And the facts set forth relative to

the judgment obtained in the Cumberland Circuit Court, upon which its enforcement was resisted, and it was contested as fraudulent and unjust, were that many years before a combination of persons, including both Herriford and Emmerson, was formed to speculate by purchasing the interests of Rebecca Thomas and others in a large estate, descended to them from Christopher Ellis, deceased; and the purchases having been effected, Herriford sold and conveyed his interest so acquired to said J. M. Emmerson and R. A. Emmerson, and they, besides paying the consideration stipulated, executed their bond to Herriford to save him harmless against any liability or responsibility "in any contingency or emergency" that might arise in relation to said estate, and pay all outstanding liabilities for the purchase of said estate by the company, and all others that might come against said estate; the bond expressing that the sale was made for one thousand dollars, without without any warranty, and that Emmersons were to take the estate "better for worse, much or little."

It was further set forth that the interest so sold to Emmersons, was that which had been ostensibly purchased of Rebecca Thomas, through fraud practiced by Herriford, and this was concealed from said Emmersons, when they entered into said contract, and that in consequence of fraud so practiced said Thomas and other heirs of Ellis afterward recovered a judgment against Herriford and others for a large amount, which was the pretext for prosecuting a suit against Cook as administrator of J. M. Emmerson, deceased, and R. A. Emmerson on their said bond, which resulted in the judgment for thirty-nine hundred dollars.

Other grounds for avoiding the claim of three thousand nine hundred dollars were alleged, which will be stated and considered so far as they may involve the correctness of the judgment in this cause.

Cook and his sureties controverted the facts alleged by

Herriford, importing a devastavit by Cook, and alleged in rela-
tion to the slaves that Emmerson before his death sold them
to Cook in exchange for the undivided interest of Cook in a
tract of land which he and Emmerson had purchased of Robert
Buckner.

Upon final hearing the court adjudged that the adminis-
trator was chargeable with the sums of $440.21 and interest,
and $500 and interest as assets—these sums being one half
of each of the debts of Byassee and Stacy—and that the sale
of the slaves by Emmerson to Cook was fraudulent and void
as to the creditors of Emmerson, and Cook should account
for four of the slaves which had not already been subjected to
the debts of Emmerson at their estimated aggregate value of
three thousand dollars.   The court further adjudged that the
two judgments in favor of Herriford rendered in the Hick-
man Circuit Court "were wrongfully obtained, the claims on
which they were founded having previously been paid."   And
it was further adjudged that said judgment of the Cumberland
Circuit Court for three thousand nine hundred dollars "was
valid and binding upon Cook, administrator as aforesaid;"
but that the same should be credited by one thousand dollars,
with interest from January 15, 1853, the amount paid by
Emmerson to Herriford for his interest in the Ellis estate;
also by twelve hundred dollars, with interest from the 1st of
July, 1857, the value of a negro girl named Sarah, sold by
Emmerson to Herriford, leaving due to Herriford at the date
of the judgment $1,864.65, for which the court rendered judg-
ment against Cook and his sureties; and from that judgment
Cook has appealed to this court, and Herriford also complains
of the judgment, and seeks a reversal on a cross-appeal.

As no other parties or creditors than Cook and Herriford
complain of the judgments, and especially as it does not
appear that the whole estate of Emmerson is insufficient to
pay its liabilities, we are not authorized to reverse the judg-

ment on this appeal, because it may operate to prefer the claims of Herriford to those of other creditors. We would further observe that there is no apparent ground of objection to so much of the judgment as renders Cook liable for part of the debts collected of Byassee and Stacy.

But the first question of importance to be determined on the appeal of Cook is whether or not his purchase of the slaves was fraudulent as to the creditors of Emmerson, as adjudged by the court below. Without elaboration or minute analysis of the evidence relative to this transaction, we deem it sufficient to say, that from the facts that Emmerson was at the time in greatly embarrassed circumstances, and so known to be by Cook, who was his father-in-law; that the interest of Cook in the land, incumbered as it then was, was less valuable and less available for the purpose of paying the debts of Emmerson than the slaves and personal property constituting the consideration of Cook's sale to Emmerson; and the further facts that two of the slaves remained in the possession of Emmerson, and were afterward adjudged to be subject to the debts of his estate, constrain us to concur in the conclusion of the court below that the pretended exchange of property was fraudulent, and neither invested Cook with title to the slaves and personal property as against the creditors of Emmerson, nor divested him of his interest in the land.

The next inquiry is as to the validity of the appellee's claims. However unjust or even erroneous the judgments recovered by him in the Hickman and Cumberland Circuit Courts may have been, they were certainly not void; and if for any cause either of said judgments might, after the expiration of the term at which it was rendered, have been vacated or modified by a proceeding in the same court, it does not appear that the court was authorized to do so in this case according to any of the provisions of the Civil Code prescribing the grounds on which new trials may be granted. (Sections 579–581.)

The Civil Code (section 14) declares that "a judgment obtained in an action by ordinary proceedings shall not be annulled or modified by any order in an action by equitable proceedings, except. for a defense which has arisen or been discovered since the judgment was rendered. But such judgment does not permit the recovery of any claim, though such claim might have been used as a defense by way of set-off or counter-claim in the action on which the judgment was recovered."

This provision has repeatedly been the subject of judicial construction in this court, from which it may now be regarded as settled, notwithstanding some apparently inconsistent dicta announced in the case of Dorsey v. Reese (14 B. Mon. 127), that, except for some cause of new trial under other provisions of the Code already referred to, an ordinary judgment can only be annulled or modified by a subsequent proceeding for some matter of defense which has arisen or been discovered since the judgment was rendered, although the defendant may still assert by appropriate suit any cause of action he may have had against the plaintiff, notwithstanding the fact that he might have used it as a set-off or counter-claim to prevent the recovery against him, but failed to do so. (Chinn v. Mitchell, 2 Metcalfe, 92; Ross v. Ross, 3 Metcalfe, 274; Moss v. Rowland's executor, 1 Duvall, 321.)

We are of opinion therefore that the alleged compromise, and accord and satisfaction of the claim for which the judgment of the Cumberland Circuit Court was rendered, and other new matters of defense occurring before the judgments were rendered, and not discovered by Cook afterward, and not of themselves constituting distinct causes of action, were not available as pleaded in avoidance or discharge of said judgments, although some of them might have been successfully relied on as defenses to the actions in which the judgments, or part of them, were recovered. The dismission of so much of

appellee's cross-petition as set up his judgments recovered in the Hickman court, upon the evidence conducing to prove the payment of the debts before the judgments were rendered, can not therefore be sustained; nor can the allowance of the credits of one thousand and twelve hundred dollars, and interest thereon, in discharge of so much of the judgment for three thousand nine hundred dollars, unless the subject-matter of those credits constituted causes of action, and not mere defenses.

As we interpret the contracts between the appellee and J. M. and R. A. Emmerson, the one thousand dollars were paid in consideration of the sale and transfer of the appellee's interest, as one of the purchasers of the Ellis estate, which was made without recourse, and it could not be the foundation of an action against the appellee on any ground disclosed by the pleadings in this case, unless it was that the money was fraudulently obtained by the appellee.

But while the judgment in the action of Thomas and others, vacating the transfer from Ellis's heirs to the company, of whom both the appellee and J. M. Emmerson were members, for fraud practiced by them and their associates in the attempted purchase and speculation, is fully sustained by the evidence in the transcript of that suit contained in this record, the conclusion is also authorized that the fraudulent means which had been used in effecting the purchase from the heirs of Ellis were alike known and understood by both the Emmersons and the appellee, and they were not deceived by him as to the character of the claim for which the one thousand dollars were paid. They could not therefore recover it back, in disregard of the terms of the contract, on the ground that they were induced by the fraud of the appellee to make the purchase and pay the money.

As to the price of the slave girl Sarah, sold by J. M. Emmerson to the appellee in 1858, for which the credit of twelve

hundred dollars was allowed by the court, if, notwithstanding the allegations of Cook that it was a payment, it might, if not otherwise explained, be treated as an independent demand, not barred by the judgment of the Cumberland Circuit Court, we are of opinion, from what seems to us to be a preponderance of the evidence, that the girl Sarah was sold to the appellee to reimburse him in the amount of a debt of about eleven hundred and seventy-five dollars he had paid to French as the surety of Emmerson, and it was erroneous therefore to apply the price of the girl as a credit on the judgment of three thousand nine hundred dollars.

The action of the court in fixing a devastavit on Cook presents the only remaining question to be determined. Although it was held in the earlier decisions of this court that not only a judgment against a personal representative on the demand of a creditor of a decedent, but also a return of *nulla bona*, was an essential prerequisite to an action to charge the representative with a devastavit, the settled doctrine now is that if an executor or administrator have in his hands assets sufficient to pay a judgment when rendered, ascertaining the amount of a demand against the estate, it is his duty to do so without awaiting the issual of an execution; and if he fail to do so the creditor may proceed by an action on his bond without further proceedings upon the judgment. (Hobbs, &c. v. Middleton, 1 J. J. Marshall, 176; Jeeter v. Durham, 6 J. J. Marshall, 228; McCalla's administrator v. Patterson, 18 B. Monroe, 201; Lee v. Waller, 3 Metcalfe, 61.) Therefore without the return of *nulla bona* upon the judgments of the appellee he was entitled to a recovery on the administration-bond, upon proof of assets in Cook's hands which should have been applied to the payment of his judgments, and the court below properly so adjudged.

Wherefore, no error in the judgment being perceived to the prejudice of Cook, the judgment on his appeal is affirmed;

but for the errors indicated to the prejudice of the appellee
the judgment is reversed on the cross-appeal, and the cause
remanded with directions to render a judgment conformable
to the principles of this opinion.

Judge LINDSAY did not sit in this case.