---

CASE 27.—ACTION BY THE COMMONWEALTH AGAINST M. S. BARKER AND ANOTHER TO RECOVER MONEY ALLEGED TO BE WRONGFULLY WITHHELD.—June 19.

# Commonwealih v. Barker

Appeal from Franklin Circuit Court.

R. L. STOUT, Circuit Judge.

Judgment for defendants, plaintiff appeals—Affirmed.

1. States—Officers—Recovery of Money Paid Under Mistake of Law.—Where an agent of the Auditor of State gave his whole time in good faith to the collection of license fees due the State, pursuant to the direction of the Auditor, and the State received the benefit of the work and expenses and paid a just compensation for the services rendered, the State could not recover the sum paid on the ground that it was paid under a mistake of law, without accounting to the agent for the expenses and services rendered.

2. Same—Actions—Counterclaim.—A defendant in an action by the State may maintain a counterclaim, though an action against the State will not lie, for the reason that a citizen cannot sue the State without its consent.

3. Pleading—Counterclaim.—A counterclaim is an independent action, and every allegation necessary to constitute an independent action is necessary to constitute a good counterclaim.

4. Appeal — Remand—New Trial — Counterclaim.—A defendant may set up a counterclaim after a judgment in his favor has

been reversed on appeal and the cause remanded for new trial.

N. B. HAYS, ATTORNEY GENERAL, and C. H. MORRIS for appellant.

1. The State is not liable for the unauthorized acts of its officers; and if such acts are not within the scope of their authority, they are not official acts; and the State cannot be made liable upon either an expressed or implied contract, or upon a basis of quantum meruit.

2. If the consideration of an express contract is illegal, the contract is void, and cannot constitute the basis of an action, or a ground of defense; and, for a greater reason that that which is illegal, either at common law or by statute, cannot be the consideration for an implied contract: Collins v. Merrell, etc., 59 Ky. (2 Met.), 164; 2 Bibb, 500; 6 Dana, 91; 8 B. Mon., 98; 8 B. Mon., 90; Bank v. King, 44 N. Y., 87; James v. Jellison, 94 Ind., 292; 9 Cyc., 740.

3. We contend that under the following authorities the trial court erred in permitting the amended answer to be filed; in overruling the demurrer of the State thereto; in not sustaining the State's plea of res judicata; in transferring to equity; in confirming the commissioner's report and its judgment, and on the return there was nothing to do except to ascertain how much had been paid appellee, Barker, within five years next before the filing of the action: Sims v. Reed, 51 Ky., 12; B. Mon., 51; Davis v. McCorke, 14 Bush, 746; Francis v. Woods, 81 Ky., 16; Cason v. Grant Co. Deposit Bank, 16 Ky. Law Rep., 447; Bean v. Meguiar, Helm & Co., 20 Ky. Law Rep., 885; Burnett v. Commonwealth (for use), 21 Ky. Law Rep., 695; Thompson v. Louisville Banking Co., etc., 21 Ky. Law Rep., 1611; Stacy v. Vermont Cent. R. Co., 32 Vt., 552; A. & E. E. of Law, 1st ed., vol. 23, p. 33.

4. The trial court erred in transferring the case to the equity docket. It is the contention of the State that the amended answer did not present any equitable defense whatever, and the court arbitrarily and without any authority to do so, denied the State the constitutional right of trial by jury: Civ. Code, sec. 11; Creager v. Walker, 7 Bush 1; Corder v. Weisenburgh, 95 Ky., 135; O'Conner v. Henderson Bridge Co., 95 Ky., 633.

W. S. PRYOR and HELM & HELM for appellee.

Commonwealth v. Barker.

POINTS AND AUTHORITIES.

1.   Where a citizen, in good' faith and under a belief that it was his duty to do so, expends money and does work for the State from which it undoubtedly receives substantial benefit, and under a mistake of law the person is paid a commission supposed to be authorized by statute, that person in suit by the State may, upon the plea of a counter-claim, be allowed the reasonable value of his services and his actual disbursements: Commonwealth v. Lyon, 24 Ky. Law Rep., 1747.

2.   Money paid under a mistake of law cannot be recovered.

(a)   When the plaintiff has received a substantial benefit.

(b)   When defendant receives it in good faith in satisfaction of an equitable claim.

(c)   Nor when it was due in honor and conscience: Greenleaf on Evidence, sec. 123, and authorities there cited.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

This action was instituted in the Franklin circuit court by the Commonwealth of Kentucky to recover of L. C. Norman, ex-Auditor of the State, and M. S. Barker, his agent, a large sum of money of which it was charged they had wrongfully and fraudulently deprived the State. The petition charged that the Auditor and his agent had entered into a fraudulent conspiracy by which the former paid over to the latter large sums of money as fees for certain illegal services pretended to have been rendered with reference to the collection of back license taxes. The defendant answered, denying all the allegations of the petition; then pleaded affirmatively in the second paragraph that the agent had rendered the services and collected the back license taxes for the State under the advice of the Attorney General, who, when the question was submitted to him, advised that it was the duty of the agent to perform the services, and that he was entitled to the fees allowed by the law for

such work; that this construction of the statute had existed and been put in operation by all the officers of the State for many years, and recognized by the Legislature as the correct construction of the statute, and that the services were performed under the direction of the Auditor, who acted under the legal advice of the Attorney General; and pleaded the contemporaneous construction of the statute, and the performance in good faith of the work as a defense to the action. The trial court sustained a general demurrer to the second paragraph of the answer, holding that, as the petition charged a fraudulent conspiracy, the Commonwealth would have to recover on that ground alone, and that the second paragraph was not a good defense to the charge of fraudulent conspiracy to rob the State. The case came on for trial upon the allegations of the petition and the denials of the first paragraph of the answer. The Commonwealth utterly failed to sustain its allegations of a fraudulent conspiracy, and contented itself alone with showing that the work had been done and the money paid to the agent. At the close of the plaintiff's testimony the trial judge gave a peremptory instruction to the jury to find for the defendant on the ground that there was no evidence to support the charge of fraudulent conspiracy or other wrongdoing on the part of the defendants, or either of them. Upon appeal this judgment was reversed; the court holding substantially that the Commonwealth was entitled to recover fees paid without warrant of law, although there was no evidence of any corrupt bargain between the Auditor and his agent. This was the sole question before the court, and any general language in the opinion which seems to go beyond this is dictum.

When the case returned to the trial court the defend-

ant Barker was permitted to refile his answer, to which theretofore a general demurrer had been sustained, and he was also permitted to amend by adding a paragraph in which he alleged that he had performed very valuable services for the Commonwealth of Kentucky, and expended large sums of money of his own in so doing, and had given his time and attention exclusively to the work; that the revenues of the State had been largely increased by reason of his work, and that the State had accepted the results of his labor and the expenditure of his money; and that he was entitled to recover the reasonable value of his services, as well as the money expended by him in performing the services for which the State had obtained the benefit. The case was referred to the commissioner to take proof and report the reasonable value of appellee's services and his money outlay. The commissioner reported that, in performing the service of collecting the license fees, he had employed agents whom he had paid in the aggregate the sum of $5,377.05, and that his own services were reasonably worth 20 per cent of the amount covered into the treasury, and that these two items constituted a just and lawful counterclaim against the Commonwealth. No exceptions were filed by the Commonwealth to the report of the commissioner, and upon final hearing, a judgment was awarded allowing the counterclaim shown to be due by the commisisoner's report; and of this judgment the Commonwealth now complains.

The evidence shows that M. S. Barker was appointed auditor's agent by Gen. Fayette Hewitt long before the origin of this litigation; that Hewitt, as the general fiscal official of the State, had ascertained that the revenue of the Commonwealth from license fees had very largely depreciated, and especially was

Commonwealth v. Barker.

this true in Jefferson county, Ky., the district in which appellee was auditor's agent; that Hewitt thereupon ordered his agent to take up this work, and to enforce the collection of all past-due licenses. The appellee was loath to perform this work, but his superior in office informed him that he had taken the advice of the Attorney General, who was of the opinion that the work was a part of the agent's duty, and therefore the agent must do it, whereupon the appellee employed other persons, whose assistance was necessary to the thorough performance of the duty, and entered upon the discharge of these newly imposed duties. It had become largely the custom in Louisville and Jefferson county for persons who carried on business for which a license was required to operate the business without paying the license, and running on indefinitely without accounting to the Commonwealth for the money due for conducting the business. This was especially true in the liquor business, but it was also true, though to a less degree, in every other business for which a license was charged. Now, appellee under the direction of the Auditor hunted up all such persons, and either by indictment or threat of the same forced them to take out a license; and, where they had been doing business for any length of time without a license, he required the county clerk to antedate it to the original period at which it should have been issued, and the party was thus required to pay to the State the license demanded by law for the whole period of time during which he had been doing business. In this way the State was saved the loss of the license fees for the time between the date at which the party had commenced business and the time at which he finally took out his license. It needs no argument to show that this was highly beneficial to the interest

of the State, and that but for this work large sums of money would have been lost to it; and this the evidence shows without any sort of attempt at contradiction. The evidence abundantly shows that the revenue of the State from the source of license fees was enormously increased during the time when appellee was engaged in looking after the collection of this branch of the revenue. Indeed, the Commonwealth makes no pretense of controverting the fact that the labors of the appellee were highly beneficial to the State, but contends that although the State received the services and they were beneficial, yet, unless there is an express warrant of law, he cannot recover on quantum meruit, and that the trial court erred in permitting the defendant (appellee) to amend his answer and set up a counterclaim after the return of the case from the Court of Appeals.

We cannot concur in this conclusion. The record shows without a shadow of contradiction that appellee in the utmost good faith undertook, in obedience to the commands of his superior, who had a right to direct him, to perform, and did perform for a long period of years, very valuable services to the Commonwealth; that from time to time, as he covered money into the treasury as the result of his labor, the Auditor drew his official warrant on the Treasurer in favor of the agent for the fees which they believed the law authorized to be paid. These warrants were paid by the Treasurer in due course; that a very large part of the money so paid to him the agent paid over to those whom he had employed to assist him in doing the work of which the State received the benefit. This work, as said before, was performed over a long series of years. It was done at the instance and under the direction of two Audit-

ors, Hewittt and Norman, and two Attorneys General, Hardin and Hendricks, the two latter of whom rendered opinions to the effect that it was the duty of the agent to do the work and that he was entitled to be paid therefor.  During this long period of time that this work was being so done and so remunerated, the Legislature met from time to time, and it is common knowledge that the accounts of the Auditor are examined and passed upon by each Legislature that assembles.   That the legislative branch of the government did not disapprove of the construction placed upon the law by the Attorneys General and Auditors mentioned may fairly be presumed from the fact that no change was made in the law, or objection to the payment to the agent.

Assuming, then, that the appellee for a considerable number of years gave his whole time in good faith to the performance of certain duties imposed upon him by his superiors in office, and which was highly advantageous to the State, and which cost him money in a large sum, can the State, after receiving the benefit of the agent's work and his outlay, and after paying over to him a fair and just remuneration, now recover from him the sum so paid, under the theory that it was paid under a mistake of law, without accounting to him in any wise for his money expenditure or the loss of his time? Greenleaf in his work on Evidence volume 2, section 123, thus states the rule: "Nor can money paid under a mistake of facts be reclaimed where the plaintiff has derived a substantial benefit from the payment; nor, where the defendant received it in good faith in satisfaction of an equitable claim; nor, where it was due in honor and conscience." Certainly it will not be contended that the appellee was not in honor and

good conscience entitled to be remunerated for his valuable services; and if the question here involved was between individuals nobody would have the slightest doubt of the right of the appellee, as a matter of law, to be remunerated for his services. The Commonwealth cannot be permitted to allow one to go on year after year laying out his money for its benefit, and giving his whole time and services for its advantage, and, after paying him for such services, then, after a long period of time, to recover it from him as money paid under a mistake of law, and leave him without any sort of recourse. Certainly, if appellant was an individual, no one would hesitate to say that this conduct would be inequitable and unjust.

The very question we have here arose in the case of Commonwealth v. Lyon, 72 S. W. 323, 24 Ky. Law Rep. 1747, which involved these facts: H. B. Lyon, J. M. Thomas, and W. Carpenter were appointed in April, 1884, as commissioners to superintend the building of the branch penitentiary at Eddyville for the Commonwealth. The contract to do the work and supply the material was let to Mason & Co. and O'Conner & Brewster. After the work had gotten under way the State failed, for reasons not given, to make sufficient provisions of funds for carrying on the work, whereupon the contractors abandoned it. Thereupon the commissioners, without any contract with the State, and without any specific warrant of law therefor, but under the advice and at the request of the sinking fund commissioners, who had general supervision of the matter, undertook to complete the building with such funds as the State afterwards furnished, and did finally complete the structure. Now, under the law these commissioners were entitled to

their traveling and necessary official expenses, but nothing for their supervisory work. It was originally contemplated that they should visit the penitentiary building from time to time to see that the contractors were keeping the terms of their contract with the State; but it was not originally intended that they should receive anything for the supervisory work. When the contractors abandoned the building, the commissioners, in order to prevent loss to the State, under the advice and direction of the sinking fund commissioners, gave a great deal of supervisory time to the building, and after it was completed they were paid their official and traveling expenses but nothing more, whereupon they made claim against the State to be paid for the value of their services in supervising the work, basing it upon the ground that these services were very valuable to the Commonwealth, and that they were given in good faith, under the direction of the sinking fund commissioners, and that the State had received and accepted them, although there was no contract or law authorizing the remuneration. In order that they might present their legal claim against the State, the Legislature passed an act waiving its sovereign prerogative of not being sued, and authorized the commissioners to sue and recover whatever was due them in law or in equity. This act did not create a cause of action which the commissioners did not theretofore have. It simply gave them a remedy of bringing the soverign before the court, which they would not have had without it. The trial court gave a judgment for the full value of the commissioners' services, being the sum of $4,000, with interest, as prayed for in the petition. The then Attorney General deeming that the judgment was just, so far as the principal of the claim was con-

cerned, appealed only from so much of it as gave interest from the time of the institution of the action. On appeal the judgment was affirmed. Commonwealth v. Lyon, 72 S. W. 323, 24 Ky. Law Rep. 1747. In the opinion it is said: "When the Legislature gave its consent that the sovereign might be sued, it left it to the court to determine what, if any, recovery should be had, and the same discretion existed with reference to interest as in other cases. The only difference between the sovereign and an individual is that it requires the sovereign's consent to be sued, but, when that consent has been obtained, then the court has the right to determine the question of interest, as it would have in a suit of one citizen against another."

When the State sued appellee, he became, at once entitled to maintain any counterclaim he had against it, although he could not have set up the counterclaim as an original cause of action, for the reason that a citizen cannot sue the State without its consent. Commonwealth v. O. & M. R. R. Co., 81 Ky. 572, 5 Ky. Law Rep. 650; Commonwealth v. Todd, 9 Bush, 708. The fact that appellee did not set up his counterclaim before the second trial does not conclude his right so to do. A counterclaim is really an independent action, and every allegation necessary to constitute an independent action is necessary to constitute a good counterclaim; and, although a party may set up a cause of action as a counterclaim to a suit brought against him, his failure so to do does not conclude his right to afterwards bring his suit. The appellee might have waited until after the judgment against him and executior issued, and then set up his counterclaim against its enforcement. Emerson v. Herriford, 8 Bush, 229; Chinn v. Mitchell, 2 Metc.

92; Ross v. Ross, 3 Metc. 274 and Moss v. Rowland, 1 Duv. 322. Appellee's right to maintain his counterclaim is strengthened by that line of cases which hold that the State is entitled to recover against a lunatic's estate on a quantum meruit its reasonable expense for his keep and maintenance at 'its asylum, although by reason of defects in the proceedings in the inquest of lunacy the judgment is void, and recovery could not be had under the statute.

For the foregoing reasons, the judgment is affirmed. Barker, J., not sitting.