## Louisville & Nashville Railroad Company, et al. v. Gamble's Administratrix.

(Decided November 25, 1913).

### Appeal from Christian Circuit Court.

Negligence—Petition May State Several Grounds of.—In actions to recover damages for negligence, the pleader may state as many grounds of negligence as the facts seem to justify, and a recovery may be had upon any of the grounds charged, if it be sufficient to justify a recovery and the evidence sustains it.

GORDON & GORDON & COX for appellant, Mason & Hanger Company.

CHARLES H. MOORMAN, JOE McCARROLL, C. H. BUSH and BENJAMIN D. WARFIELD for appellants.

DOWNER & RUSSELL, O'REAR & WILLIAMS and HIRAM BROWN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming Part and Reversing in Part.

These appeals are prosecuted by the Louisville & Nashville Railroad Company and the Mason & Hanger Company from a joint judgment entered against both of them on a joint verdict in the Christian Circuit Court in favor of the administratrix of Volney Gambel for $7,500.

The deceased, Volney Gamble, was a laborer employed by the Mason & Hanger Company, which com-

pany was employed by the Louisville & Nashville Company to do some repair or construction work along the line of its existing railroad in Christian County. While so engaged he was struck and killed by a fast passenger train of the railroad company. The circumstances surrounding his death are substantially these:

The deceased and other laborers employed by the Mason & Hanger Company were removing dirt from a place immediately by the side of the existing main track of the railroad company. The deceased at the time he was killed, was working at the end of the ties in a place that was several inches lower than the bottom of the ties, and when struck by the pilot of the engine was in a stooping position. His face was toward the approaching train, but aside from the fact that he was in a stooping position and not looking at or for the train, his view of it was obstructed by a pile of dirt near the side of the track. The place at which the deceased and other laborers of the company were working was dangerous on account of its proximity to the railroad track on which the trains of the railroad company were passing, and for the protection of these laborers yellow flags had been put out about 400 yards from the place they were engaged.

These yellow flags were caution signals to the trainmen, and it was usual and customary, for passing trains to give the whistle signal at these yellow flags as a warning of the approach of the train and to slow down the speed of the train so that it would be well under control, and run at a reduced rate of speed when the point was reached where these laborers were working. The train that struck and killed the deceased was a fast passenger train going South, and several witnesses testify that it did not give at or near the yellow flag any warning signal of its approach and was running at a speed of from 35 to 40 miles an hour when it reached the point where the laborers were working and struck the deceased.

The engineer of the train testified that he saw the yellow flag and blew the customary warning or caution signal, and that he was running about fifteen miles an hour when he passed the yellow flag but that the speed of the train had increased to twenty-five miles an hour when the point at which the deceased was working was reached, although the flag was as he testified, notice to him to reduce his speed and run slow.

There is ample evidence supporting the theory that the warning signal was not given at the yellow flag by

this train and that it was running at a speed of 35 or 40 miles an hour. Assuming this evidence to be true, the railroad company was guilty of two acts of negligence: first, in failing to give the warning signal at the yellow flag; and, second, in running at this high rate of speed at a place where it was the duty of the engineer to have his train under control and to run at a reduced rate of speed.

Nor is there any evidence that the deceased was guilty of contributory negligence. The place and position in which he was working, and the obstruction between him and the approaching train, prevented him from seeing it, and if it did not give the warning signals and was running at the high rate of speed testified to, the deceased did not have time or opportunity to get into a place of safety when he saw or heard the train about the time it reached him. The train was on him before he knew it was coming or had time to get out of its way.

But notwithstanding these facts, counsel for the railroad company earnestly insist that the judgment as to it should be reversed, because the petition is defective, for errors committed by the trial court in giving instructions, in admitting incompetent evidence, and in failing to give a peremptory instruction in behalf of the railroad company.

So far as the admission of the evidence alleged to be incompetent is concerned, it is sufficient to say that this evidence was not introduced for the purpose, and did not have the effect, of fixing liability on the railroad company but on the Mason & Hanger Company nor did it in any manner prejudice the railroad company.

The assigned errors of the trial court, in giving instructions and refusing a peremptory have their origin and basis in the contention that the petition did not authorize the submission of the case to the jury or a recovery in behalf of the plaintiff, and this being so, it was error to give any instructions at all and to refuse to take the case from the jury.

If the petition is good, there is no doubt of the sufficiency of the evidence to warrant a recovery against the railroad company, and this being so, the court properly submitted the case to the jury. Several criticisms are made to the instructions, all of which we consider to be destitute of merit.

The jury were told in substance that if they believed from the evidence that the yellow flag was placed for

the purpose of advising engineers to give warning of the approach of trains, and that the engineer in charge of the engine that killed the deceased saw this flag and negligently failed to sound any warning whistle and ran his train at a high and dangerous rate of speed at the point where the deceased was working, they should find against the company.

They were further told that although they might believe the company was guilty of negligence in the respects named, yet if the deceased was himself guilty of negligence which contributed to cause the injuries complained of, and that but for such negligence he would not have been injured, they should find for the company.

They were further told that it was the duty of the deceased to exercise reasonable care to watch for approaching trains and to keep out of their way, and that if he failed to exercise this degree of care to discover the aproach of the train and to keep out of its way, they should find for the railroad company, although they might believe the engineer failed to give warning of the approach of the train.

They were further told that negligence meant a want of that degree of care which a majority of careful and prudent persons are accustomed to exercise for their own protection under like circumstances. Some complaint is made of the use of the word "majority" in this instruction. Although the instruction would probably have been in better form without the use of the word, it is manifest that its use was not at all prejudicial.

The principal reliance of counsel for a reversal is that the petition is fatally defective. The petition charged "That the defendants, their servants, agents and employes, on or about the 30th day of September, 1910, and while engaged in repairing the track and road bed of the defendant, Louisville & Nashville Railroad Company, and while operating and running one of the engines and trains with cars attached thereto, carelessly and negligently ran said engine with cars attached against and over Volney Gamble, killing him.

"That said Gamble at the time of said injury was a laborer employed by the defendants, engaged in labor on said railroad construction work, under the direction and control of the agents, servants and employes of defendants, and under the direct orders of a foreman or boss directing his work, as a laborer, superior in authority to him, and she states that said Gambel had no

control over the operation of said construction work or the manner in which it was to be done, and had no control over the operation of the passage of trains and cars and engines over the tracks of the defendant, Louisville & Nashville Railroad Company at the place where said construction work was being done or elsewhere. * * *

"And she states that said decedent, while in the performance of his duties as a laborer aforesaid, and acting within the scope of his employment and under the direct supervision of a boss of defendants in direct control of said work, and while in observance of ordinary care for his own safety, the defendants, their agents, servants and employes, carelessly, recklessly and negligently ran one of its engines with cars attached, rapidly over said track, striking, running upon and against said Gamble, and killing him.

"Plaintiff states that said defendants, their agents, servants and employes, and superior in authority to said Gamble, ordered and directed and placed said Gamble in a dangerous and unsafe place to work; that it was known to said defendants, their agents, servants and employes, that said place was dangerous and unsafe, and to each of them, but which fact was unknown to plaintiff's intestate, who could not have discovered same by the exercise of ordinary care in the discharge of the duties of his employment.

"Plaintiff states that the defendants, their servants, agents and employes, saw and knew said Gamble's danger in time to have avoided the accident and injury, but carelessly and negligently ran said engine and cars against and over said Gamble, killing him."

With the pleadings and evidence in the condition stated, the argument is made that the verdict should have been directed in favor of the company, because there was no evidence to support the averments of the petition. The petition charged two separate, distinct acts of negligence on the part of the railroad company; one being that the deceased was killed by the careless, negligent and reckless manner in which the train was operated that struck him, and the other, that the danger of the deceased was discovered in time to have avoided injury to him.

We have often ruled that in cases like this the pleader may state as many grounds of negligence as the facts seem to justify, and that a recovery may be had upon any of the grounds charged if it be sufficent to justify a recovery and the evidence sustains it. Under this rule it

seems to us very clear that the charge in the petition that the defendants "carelessly, recklessly and negligently ran one of its engines with cars attached rapidly over said track, striking, running upon and against said Gamble and killing him," was a sufficient charge of negligence to authorize a recovery of the evidence sustained it. It was upon this ground of negligence that the case went to the jury as against the railroad company, and, as we have heretofore stated, the evidence was ample to establish its negligence as the proximate cause of the death of the deceased.

It would serve no useful purpose to relate the evidence upon which a recovery was sought and had against the Mason & Hanger Company. We have read and carefully considered it, and our conclusion is that the evidence did not authorize a recovery against this company, and therefore the motion for a peremptory instruction in its favor should have been sustained.

Wherefore, the judgment as to the Louisville & Nashville Railroad Company is affirmed and the judgment as to the Mason & Hanger Company is reversed.