## National Surety Company v. City of Louisville, et al.

(Decided May 26, 1915.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, No. 4).

1.  Municipal Corporations—Comptroller of City Custodian of Certain Papers.—Under the provisions of a city charter which creates the two offices of City Treasurer and City Comptroller, and which provides that it shall be the duty of the Treasurer to receive and keep all monies of the city from whatever source derived, and that the City Comptroller shall have the custody of all official, penal, indemnity or security bonds and such other records, papers, and documents of value, the City Comptroller was the lawful custodian of certain guaranty or security bonds filed by contractors to insure for a term of years the work done and materials furnished by them under their contracts.

2.  Municipal Corporations—Comptroller—Action Against.—The Comptroller having failed to turn over to his successor certain bonds which had been filed by contractors under their several contracts with the city, the several contractors may be properly joined with the city as plaintiffs in an action on his official bond, although the cause of action stated does not affect the interests of the several contractors equally or to the same extent, and although each of the contractors has no interest in the bonds so deposited by the other contractors.

3.  Municipal Corporations—Custodian of Securities—Action for.—If a city official who is the custodian of valuable securities fails

to turn over the same to his successor there is a breach of his bond for which his surety is liable whether he still has possession of the same or has previously disposed of them; and the city may maintain an action for the specific securities or, if they cannot be had, for their value.

4. Municipal Corporations—Action for Securities.—In such an action praying that the specific securities be returned to the city, and in the alternative for their value if they were not to be had, there was only one cause of action stated.

5. Municipal Corporations—Street Contracts—Bonds.—Because it is provided in one section of a city charter that certain street contracts made by a board of the city shall be filed in the office of that board, it does not necessarily follow that the bonds required to be deposited to secure the work done and the materials furnished under the contract should also be placed in the custody of that board,

6. Municipal Corporations—Street Construction—Contractors.—The right of a city to require contractors for street construction to give security, either personal or collateral, that the work done and the materials furnished are free from flaws and defects does not depend upon the validity of an ordinance requiring such provisions in the contracts.

7. Municipal Corporations—Comptroller—Custodian of Securities.— The provision of a city charter making the Comptroller the custodian of certain bonds and securities "not required to be deposited with any other officer," means not required by the charter to be deposited with any other officer.

JOHN BRYCE BASKIN and BASKIN, DUFFIN, KINKEAD, SAPINSKY & DUFFIN for appellant.

PENDLETON BECKLEY and STEWART CHEVALIER for appellees.

## OPINION OF THE COURT BY JUDGE TURNER—Affirming.

By the charter of cities of the first class, to which the city of Louisville belongs, the office of comptroller is created, and it is made the duty of the Mayor, in the month of December succeeding his election, to appoint such official for a term of four years.

After prescribing the duties of the comptroller, the charter provides: (Sec. 2899 Ky. Statutes.)

"He shall have the custody of the city seal, the public records, the original rolls of ordinances of the general council, of all original contracts not herein required to be filed elsewhere, and such deeds and certificates as relate to the title of any property of the city; all official, penal, indemnity, or security bonds, and such other records, papers and documents of value as are not re-

quired to be deposited with any other officer, all of which shall be registered by numbers, dates, and contents."

In December, 1909, Samuel M. Wilhite was appointed comptroller and qualified by giving the bond required by the charter in the sum of $20,000 with appellant National Surety Company as surety thereon. In December, 1913, he was re-appointed such comptroller and again executed an official bond in the sum of $20,000 with the same surety.

In July, 1914, it was discovered that certain bonds, which had been deposited with the city, were missing, and that he had embezzled the same, whereupon he resigned, and having failed or refused to turn over to his successor the missing bonds, this action was instituted by the city jointly with the owners of the bonds so deposited to recover the same or their value.

The petition alleges that while Wilhite was comptroller the contractors, who are joined as plaintiffs with the city, deposited with it certain bonds with coupons attached, to guarantee work done and materials furnished by said contractors in the construction and re-construction of streets under contracts made between such contractors and the city; that said bonds were so deposited under the requirements of an ordinance of the city relating to such contracts, and under the terms of the several contracts; that the bonds so deposited by the contractors with the city came into the possession of Wilhite as comptroller, and that he thereby became custodian of the same as security for the work done by the several contractors under the terms of the ordinance and their respective contracts; that under the provisions of the charter it was the right and duty of Wilhite as comptroller to take said bonds into his possession, custody, and control, together with the coupons thereto attached, and that while he was so in possession of same he embezzled and appropriated them to his own use, whereby there was a breach in the covenant of his said official bond, the value of the bonds so embezzled being fixed at $14,583.75, as to which value there is no issue. The petition prays for a return of the bonds or a judgment for their value.

The defendant Wilhite filed an answer confessing judgment according to the prayer of the petition.

In the first paragraph of its answer the appellant only denied the legal conclusions to be drawn from the allegations of the petition. In the second paragraph it

set up in full the terms of the contract-ordinance wherein it is provided that a contractor who does street construction or re-construction for the city shall have inserted in his contract a provision guaranteeing the work done and materials used in the construction of the same, and that this guaranty shall be for a term of five years, and that the contractor shall deposit with the City Treasurer bonds of the city of Louisville or of the United States amounting to ten per cent. of the contract cost of the work, and upon the appearance of any defect in the work or materials within five years, the contractor shall repair the same, or upon his failure to do so the city may have the defects remedied, charge the expense thereof to the contractor, and sell the bonds so deposited for the purpose of paying same, and at the end of the said five year period the remaining bonds and interest, not so appropriated, are to be returned by the city to the contractor.

It is also alleged that the plaintiffs' contractors under their several contracts with the city constructed or reconstructed certain streets and delivered to the city the bonds named in the petition pursuant to the terms of the city ordinance and their contracts made thereunder; that the Treasurer of the city of Louisville after receiving said bonds, without authority of law and in violation of said contracts, delivered same to defendant Wilhite, who converted them to his own use. It is admitted that Wilhite was comptroller of the city when he received the bonds, but it is alleged that he acted without authority in receiving them, and that they were delivered to him without authority of law and only in his individual capacity and that he never received or held them in his official capacity.

To this answer the plaintiffs filed a reply alleging that since the passage of this ordinance in October, 1900, it had been the custom and practice of the city and its administrative officers to receive and keep all bonds of this kind in the following manner: That at completion of a contract the Board of Works would notify the Treasurer and Comptroller and direct them to receive the bonds required by the ordinance and contract to be deposited, and upon the receipt of such notice the contractor would deliver the required bonds to the Treasurer, who would register them in his office, and would then deliver them to the city Comptroller, who would also register the same in his office, and thereupon the

Treasurer and Comptroller would deposit them in a safety vault box kept at a trust company, in the name of the city, for the sole purpose of safely keeping such bonds, and which box could only be opened in the joint presence of the said Treasurer and Comptroller, each of whom had a separate key different from that of the other, and that the said bonds would be so kept and held until the expiration of the five year period. These facts are pleaded and relied upon as showing a contemporaneous construction of the provisions of the charter and ordinance during a long period of years by those whose duty it was to administer them, and it is alleged that this custom and practice was followed in connection with the bonds herein involved.

A demurrer was filed to this reply, and being carried back to the answer it was sustained, and the defendant Surety Company declining to plead further a judgment was entered against it and Wilhite, directing the return to the city of the bonds described in the petition for the use and benefit of the city and the other plaintiffs as their several interests might appear under their respective contracts, if the same were to be had; and, if said bonds and coupons, or any of them, were not to be had, then judgment was entered for the value of same.

The appellant entered a motion to strike from the petition as parties plaintiff the names of all the ten contractors who were joined as such with the city, and complains of the ruling denying this motion. The argument is that no one of these contractors has any interest in the bonds deposited by the others, and that, as their interests were several and not joint, each of the ten contractors should have been joined with the city in a separate suit to recover the particular bonds which he had deposited or their value.

Under section 22 of the Civil Code "all persons having an interest in the subject of an action and in obtaining the relief demanded may be joined as plaintiffs" unless otherwise provided.

It is true no one of the contractors was interesed in any of the bonds deposited with the city by the other nine; and it is true that they were each interested in the subject of the action in a different degree and to a different extent, depending upon the value of the work which they had done under their contracts with the city, and the value of the bonds which they had deposited; but it is also true that they each deposited their several bonds

under the terms of a contract identical with the contracts made by the other nine, and that both the questions of law and fact involving their rights were precisely the same, and if one could recover the other nine could, and it was not necessary either that the cause of action should affect them equally or that their interests should have been joint.

As said in Newman on Pleading in section 149:

"The Code in declaring that all persons having an interest in the subject of the action and in obtaining the relief demanded may join as plaintiffs, unless it is otherwise provided by the Code, has undoubtedly changed somewhat the former rule as to the joinder of parties. in an action of law, and adopted to a great extent the former rule of equity as the general rule in all actions. It must not, however, be understood that now all persons may join as plaintiffs when they have merely a remote or contingent interest in the subject of the action. To authorize several persons to join as plaintiffs in an action they must have either a legal or equitable direct interest in the subject of the action. That interest need not now, as was always required formerly, in an action at law, be a joint interest; for in equity, as has been said, the trustee and *cestui que* trust, or the legal title holder and the beneficiary, might unite as plaintiffs in the action."

The city was not the mere trustee of these bonds, holding them for the benefit of the legal owners, but under the terms of the contracts with the several contractors it had an equitable interest in them and in certain contingencies had a right to sell them and appropriate the proceeds thereof, and for this reason, having an interest in them, and being entitled to the possession of them, it might have maintained this action for their recovery or for a judgment for their value without joining any of the contractors either as parties plaintiff or defendant; and while the contractors were not necessary parties, being the holders of the legal title to the bonds and having an interest in them, they were at least proper parties. Even if the ten separate suits had been filed, as suggested, the court would have consolidated them, and entered the precise judgment it did. So that in any event appellant's sustantial rights were not prejudiced.

The motion made by appellant to transfer the case to the equity docket was properly overruled; there was involved only the simple legal issue whether or not the

Comptroller was the lawful custodian of the bonds misappropriated.

The appellant also entered a motion to require the plaintiffs to elect which of the alleged causes of action stated in the petition they would prosecute.

The argument is that the petition states two causes of action, one an action in detinue to recover the specific bonds named, and the other an action for damages to recover for the breach of the covenant in an official bond; that the two alleged causes of action being of different character may not be joined under the provisions of section 83 of the Civil Code.

But only one cause of action was stated; the whole suit is based upon the bond which was a contract between the city and Wilhite and his surety, and there was just as much a breach of the covenant if Wilhite still retained the possession of the bonds at the time suit was filed as if he had previously hypothecated or disposed of them.

The plaintiffs could not know in advance, and there is nothing in the record to now show, whether Wilhite still retains the bonds or whether he has disposed of them, and that being true the plaintiffs properly sued for the bonds, if they could be obtained, and, if not, for their value.

The whole action grew out of a breach of the official bond, and while alternative relief was prayed for in the event the bonds were not to be had, the petition really only stated one cause of action, and that cause of action was Wilhite's failure to deliver the bonds to his successor when they were demanded of him.

The only remaining question is whether the Comptroller was the lawful custodian of these bonds which were deposited with the city, or whether they were wrongfully turned over to him without authority of law by other city officials. If he was the lawful custodian his surety is liable, and if he was not it is not liable.

The contention is that either the City Treasurer or the Board of Public Works, under the provisions of the charter, was the proper custodian, or that if neither of them was that the charter failed to provide a custodian, and it was therefor within the power of the municipal legislative bodies to designate the custodian, and that under the ordinance of 1900, which required the contractors to *deposit* the bonds with the Treasurer, that he was thereby made the proper custodian.

Sec. 2902, Kentucky Statutes, in prescribing the duties of the Treasurer, says:

"There shall be elected by the qualified voters of the city, at the time and places provided for the election of the Mayor, a Treasurer, whose duty it shall be to receive and keep all moneys of the city. and pay out the same on the warrants drawn by the auditor and countersigned by the Comptroller, except as herein provided. All moneys belonging to the city received by an officer or agent thereof, either from collections, loans, sale of bonds, fees, fines, and penalties, or otherwise, shall be deposited in the city treasury regularly once a day, unless otherwise provided by law or ordinance; and in case the provisions of this section are not fully complied with, it shall be the treasurer's duty to report any delinquencies to the mayor."

Section 2817 of the Kentucky Statutes provided that whenever a contract is made by either one of the boards created by the charter the same shall be filed in the office of the board and a copy thereof transmitted to the Comptroller.

It is perfectly apparent from the language of the section quoted that the Treasurer was only to receive and keep *all moneys* of the city from whatever source derived and pay the same out in the manner prescribed. There is not the remotest suggestion that he is to be the custodian of any of the valuable papers or evidences of debt belonging to the city; while on the contrary section 2899, quoted above, expressly makes the City Comptroller the custodian of the city seal and public records, and the original rolls of ordinances of the general council, of all original contracts, of all deeds and certificates which relate to the title of the city's property and "all official, penal, indemnity and security bonds, and such other records, papers and documents of value as are not required to be deposited with any other officer."

The ordinance of 1900 required such bonds to be *deposited* with the Treasurer, and whether that provision is in conflict with the provision in section 2899 making the Comptroller the custodian of "all official, penal, indemnity or security bonds, and such other records, papers and documents *as are not required to be deposited with any other officer"* remains to be considered. In other words, does the qualification last quoted put it within the power of the municipal legislative bodies to designate the custodian of such "records, papers and

documents of value as are not required to be deposited with any other officer," or does that language mean "such other records, papers and documents of value as are not required (by this charter) to be deposited with any other officer?"

Reading the whole of section 2899 defining the duties of the Comptroller it is fairly apparent that by the broad and comprehensive language last quoted it was intended by the charter to make him not only the custodian of the specific bonds therein named, but all other valuable papers and securities of the city not required by the charter to be elsewhere kept.

In Lowry v. City of Lexington, 113 Ky., 775, the General Council had passed an ordinance providing for the appointment of certain officers otherwise than by the General Council in joint session under a charter provision that "all officers and agents of the city, in any of its departments, not required to be otherwise elected or appointed, shall be elected by the General Council in joint session," and the court said in construing this provision:

"For the city it is maintained that this should be construed to mean that if the General Council, in creating the officers, has not required them to be otherwise elected or appointed, then they shall be elected by the General Council. We are not able to concur in this view. It seems to us clearly to mean 'not required by the charter to be otherwise elected' or appointed."

Under these two sections there can be no doubt that it was in the mind of the Legislature to make the Treasurer the custodian of all moneys of the city, and the Comptroller the custodian of all official papers and valuable documents of whatever kind or description not required by the charter to be elsewhere kept.

But it is argued that because by the provisions of section 2817, Kentucky Statutes, street contracts made by the Board of Public Works are required to be filed in the office of that Board, and copies thereof transmitted to the Comptroller, that it necessarily follows that the bonds which are required to be deposited with the city to secure the proper performance of the contracts, are a part of the contracts, and the Board of Public Works is therefore their proper custodian. But to so hold would be to give no effect whatever to the provisions of section 2899 which unmistakably shows a purpose to

make the Comptroller the custodian of such valuable papers and evidences of debt.

Further it is argued that because the ordinance of 1900, requiring the bonds to be filed, refers to them as "guaranty bonds" and because section 2899 does not make the Comptroller the custodian of "guaranty bonds" they should have been left in the custody of the Treasurer with whom the ordinance required them to be deposited; but this is a mere play upon words. It is immaterial whether the bonds be designated "guaranty bonds," "indemnity bonds," or "security bonds;" it was contemplated by the provisions of that section that they should be in the custody of the Comptroller. We attach no importance to the fact that "guaranty bonds" were not specifically named in that section of the Statute; at any rate "guaranty bonds" would certainly come under the head of "other documents of value."

If it be conceded that the ordinance of 1900 is void because it is in conflict with the provisions of section 2899 of the charter, which is not decided, still the validity of the contracts under which the bonds were deposited with the city does not depend upon that ordinance. If that ordinance had never been passed, it was within the rights of the city in making its contracts for street construction to require the contractors to give any kind of security, either personal or collateral, that the work done and materials furnished by them were free from flaws and defects.

The city and the contractors entered into such contracts, and the bonds so deposited were rightfully in possession of the city under their terms, even if the ordinance was void, and, therefore, for the purposes of this case we have deemed it unnecessary to determine whether the provision of the ordinance requiring the bonds to be deposited by the contractors with the City Treasurer, is in conflict with section 2899 of the charter, and for that reason void; the admitted facts in the pleadings here are that the bonds in question came into the custody of the Comptroller, and whether they came into his custody directly from the contractors, or whether he received them from the Treasurer is of no importance. The essential thing is that they came into his possession as Comptroller, and he as such was their lawful custodian under the plain terms of the charter.

The judgment is affirmed.

Whole court sitting.