## Commonwealth, On Relation, et al. v. McCormack.

(Decided October 30, 1917.)

Appeal from Franklin Circuit Court.

1. Limitation of Actions—Necessity for Pleading.—A statute of limitation is not available on demurrer, but, to be taken advantage of, must be pleaded.

2. Pleading—Exhibit—Evidence.—A report to the Governor by the State Inspector and Examiner upon the affairs and accounts of the State Board of Health has no evidential value; and cannot aid either party upon consideration of a demurrer to the petition, with which it is filed as an exhibit.

3. States—Health—Fees for Physician's Certificates.—By an act of May 24, 1890, and amendment thereto increasing amount of fees, approved March 18, 1904, fees derived by the State Board of Health

from physicians' licenses are the property of the Commonwealth, entrusted to the board to be administered as are its annual appropriations.

4. States—Officers — Public Funds — Irregularities. — The Commonwealth cannot, after disbursement, recover of an officer public funds expended by him for purposes authorized by law, even though they were collected and disbursed in an illegal manner.

5. Officers—Diversion of Public Funds—Pleading—Petition.—In a civil action by the Commonwealth against the Secretary of the State Board of Health for alleged diversion of public funds, allegations of irregularity in the manner of their collection by the board and of payments thereof made or permitted by the defendant, do not state a cause of action.

6. Officers—Diversion of Public Funds—Pleading.—In a civil action by the Commonwealth against the secretary of the State Board of Health to recover the amount of public funds paid to attorneys-at-law, employed by the board to represent it, allegations that such payments were made by defendant, in violation of his trust as an officer of the state and of the board, in violation of law and without warrant therefor, are mere conclusions of law and do not state a cause of action against the defendant.

7. Attorney and Client—Officers—Action—Pleading Statute.—While county attorneys, Commonwealth attorneys, and the Attorney General are the legal advisers and representatives of the State Board of Health, other counsel may be employed for them by the Governor upon request, and statement of the necessity therefor, made to him by the Attorney General; and, in a civil action by the Commonwealth against the secretary of the board to recover the amount of public funds paid to special counsel, their employment by the Governor must be negatived in the petition.

8. Officers—Diversion of Public Funds—Action—Pleading—Petition. —In a civil action against the secretary of the State Board of Health to recover the amount of public funds paid to members of the board, the law permitting members of the board to be paid for certain of their services out of funds entrusted to the board, allegations that defendant paid or allowed to be paid such sums to the members of the board, in violation of his trust as an officer and in violation of law, do not state a cause of action.

9. Officers—Diversion of Public Funds—Action—Pleading.—In a civil action by the Commonwealth against the Secretary of the State Board of Health for alleged diversion of public funds, a charge that the defendant appropriated to his own use and benefit certain public funds, specifically described, sufficiently stated a cause of action against him.

10. Officers—Diversion of Public Funds—Action—Pleading.—In a civil action by the Commonwealth against the secretary of the State Board of Health for alleged diversion of public funds, failure to describe the fund so that it may be identified renders the petition bad upon demurrer.

11. Officers—Diversion of Public Funds—Action—Pleading.—In a civil action by the Commonwealth against the secretary of State Board

of Health for alleged diversion of public funds, under an agreement between him and the members of the board to divide among themselves the surplus of the fees arising from physicians' certificates, failure to show that there was a surplus or that any of it was distributed as agreed renders the petition bad upon demurrer.

M. M. LOGAN, Attorney General, and JOHN C. DUFFY for appellant.

C. U. McELROY, KOHN, BINGHAM, SLOSS & SPINDLE and GUY BRIGGS for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

On November 13, 1914, this action was instituted in the Franklin circuit court by the Commonwealth of Kentucky, on relation of the Attorney General, seeking to recover of J. N. McCormack a total of about $18,000.00, alleged to have been, in part, paid out by him as secretary of the State Board of Health in an illegal manner and, in part, to have been wrongfully and illegally appropriated to his own use. An amended petition was filed saparating into paragraphs the several items involved; and one of these paragraphs was further amended. Demurrers to the petition as amended and to each paragraph were sustained. Plaintiff declining to plead further, the petition was dismissed, and from that judgment this appeal is prosecuted.

The several paragraphs of the petition, as finally amended, may be roughly classified as follows:

(a) In the first paragraph it is alleged that the State Board of Health, established by an act of the legislature approved March 16, 1878, had received from the Commonwealth, annual appropriations of, $2,500.00 from 1883 to 1889, inclusive; $5,000.00 from 1900 to 1910, and $30,000,00 from 1911 to 1914, inclusive; that it had also received fees for issuing licenses to physicians for the practice of medicine, at the rate of $2.00 for each certificate issued from 1893 to 1904, and at the rate of $10.00 for each certificate after March, 1904; that all of the appropriations by the state were drawn from the state treasury in an improper and illegal manner, and, with the fees collected, placed in bank to the credit of the State Board of Health, and were paid out, or allowed to be paid out, by the order, direction and checks of the defendant, in violation of his trust as an officer of the Commonwealth and of the State Board of Health, in vio-

lation of law and without warrant therefor; and that the aggregate so paid was $18,379.48.

(b) In the second and sixth paragraphs of the petition, alleging payments to others than himself, it is alleged in the second paragraph that the defendant had paid out the funds of the State Board of Health to certain lawyers for legal services, certain specified sums aggregating $5,740.60, in violation of his trust as an officer of the Commonwealth and of the State Board of Health, and in violation of law and without warrant therefor; and in the sixth paragraph that he had paid, or allowed to be paid, out of the funds arising from registration fees collected by the State Board of Health from applicants for licenses to practice medicine, to the members of the board the sum of $100.00 each, aggregating $800.00, in violation of his trust as an officer of the Commonwealth and of the State Board of Health and in violation of law.

(c) In the third and fourth paragraphs of the petition it is alleged that the defendant, in violation of his trust as an officer and in violation of law, unlawfully and wrongfully appropriated and applied to his own use and benefit, funds of the Commonwealth and the State Board of Health arising from the registration fees for issuing certificates to physicians: On February 28, 1896, $2,-406.88; and from January 1, 1895, to June 1, 1906, $8,932.00.

(d) In the fifth paragraph of the petition, it is alleged that on or about May 25, 1906, the defendant, in violation of his trust as an officer and in violation of law, unlawfully appropriated to his own use and benefit the sum of $5,000.00 of the funds of the state of Kentucky.

(e) In the seventh paragraph it is alleged that the defendant and the members of the State Board of Health entered into an illegal and wrongful agreement, whereby they were to apply to their own use and benefit the funds of the state of Kentucky and the State Board of Health derived from license fees collected from physicians, after the expenses of administering the law had been paid, upon the basis of ten per centum of such surplus to each member of the board and thirty per centum to defendant; that these parties wrongfully and unlawfully received such sums and defendant, in violation of his trust and wrongfully and unlawfully, paid such amounts to the members of the board and to himself; and that plaintiff was unable to state the amounts received by the parties under this agreement, but that the defendant knew

and should be required to answer the amount each so wrongfully and unlawfully received.

(f) The eighth paragraph simply summed up the other paragraphs and alleged that plaintiff was entitled to recover the aggregate of the sums claimed.

Before taking up these several paragraphs, we shall dispose of a number of propositions of general application.

(1) It is insisted for the defendant that the petition shows, upon its face, that all of the items asserted, except a very small portion thereof, amounting to less than $500.00, are barred by limitation, and for that reason the demurrer, except as to the items not barred, should have been sustained. There was formerly some confusion in this state upon this question, and the rule relied upon by appellee has been frequently followed and was seemingly recognized, though not applied, in one rather recent case, Grazianni v. Ernst, 169 Ky., 751, but, with this single exception, it has uniformly been held, in recent years, that "the statute is no bar to the merits but is only a privilege extended to the litigant, whereby he may, if he chooses, close the door of the courts on his tardy adversary"; and that he can take advantage of the statute only by pleading it. That the statutes of limitations are available upon demurrer has been expressly repudiated in the following cases, in which attention is called to the fact that in some earlier decisions such a rule had been recognized: Swinebroad v. Wood, 123 Ky. 664; Childers v. Bales, 124 S. W. 295; Jolly v. Miller, 124 Ky. 100; Yager v. Bank of Kentucky, 125 Ky. 177; Green County v. Howard, 127 Ky. 379; Baker v. Begley, 155 Ky. 234; Hackett v. State Bank and Trust Co., 155 Ky. 392; Davie v. City of Louisville, 159 Ky. 252; Meritt v. Cravens, 168 Ky. 155; Taulbee v. Hargis, 173 Ky. 433.

The last of these cases is the most recent utterance of this court upon the question; and it is apparent that, whatever may have been the practice formerly, the rule is now firmly established in this state that the question of limitation cannot be raised by demurrer, but must be pleaded.

(2) With the last amended petition plaintiff attempted to file, as an exhibit, a report of the State Inspector and Examiner to the Governor on the affairs and accounts of the State Board of Health. Counsel for both plaintiff and defendant attempt to rely upon portions of that report in support of their respective contentions; but, it is

clearly unavailable to either for any purpose. While it is filed with the petition and referred to as an exhibit, it is, in no sense, an exhibit as the term is applied to a paper that must or may be filed with and made a part of a pleading. Such an exhibit must be the basis of, or support as evidence, the cause of action or defense and have some binding effect upon the adverse party.

Section 120, Civil Code, requires that a note, bond, bill, or other writing, evidencing indebtedness, must be filed as a part of the pleading, if in the power of the party to produce it, and if not filed, the reason for the failure must be stated in the pleading.

Section 128, Civil Code, provides that a party may file with his pleading any writing upon which he may intend to rely as evidence.

This report of the State Inspector and Examiner is, in no sense, either a written evidence of indebtedness, required to be filed, or a writing that could be relied upon as evidence and permitted to be filed. It was not even sworn to and has no evidential value whatever. It was, therefore, not an exhibit that could be filed with a pleading and cannot, of course, either aid or injure the pleading. We shall, therefore, eliminate it from our consideration.

(3) The funds derived by the State Board of Health from annual appropriations are admittedly the property of the Commonwealth, but the fees, arising from the issuance by the board to physicians of licenses to practice medicine, are claimed by appellee to have been the private property of the members of the board, allowed to them under the law for their services in making the examination and issuing the certificates; while it is claimed by the plaintiff that these fees belong to the state, or at least to the State Board of Health as a department of the state to be administered by the board for public purposes and as a trust.

In 1874, a law was enacted requiring all physicians desiring to practice medicine within the state, to procure a license before doing so, and providing upon what conditions and by whom such licenses should be issued, and for the payment of the fees to the persons authorized to issue the certificates, for their services incident thereto. The State Board of Health was established by an act of the legislature in 1878, which defined the powers, duties and compensation of the members of the board and its secretary, but this act, however, did not give to

the board any control or authority over the issuance of certificates to physicians for the practice of medicine. By an act of the legislature of May 24, 1890, the law requiring the registration of physicians was amended by substituting the State Board of Health for "A legally chartered medical school, or state medical society," theretofore authorized to issue certificates to practice medicine, and by providing that the State Board of Health, for issuing the certificates, should charge a fee not exceeding $1.00 for each certificate issued.

Prior to the enactment of this statute, the fees for the certificates went to the parties issuing them, as compensation for their services; and it is insisted by counsel for defendant that, since the amendment to this law, which transferred the duty of issuing the certificates to the State Board of Health, did not specify that the fees so paid were to be the property of the state or of the board, the fees were to continue to be, as theretofore, paid to the members of the board as compensation for their services incident to the examination of the applicants and the issuance to them of certificates; and that this disposition of funds from this source was recognized in subsequent enactments of the legislature amendatory to the law against empiricism, always treated separately and independently of the law with reference to the establishment and control of the State Board of Health. There might be some merit in this contention, were it not for the fact that, at the time the duty was imposed upon the State Board of Health of issuing licenses to physicians, the compensation payable to the members of the board and its secretary was prescribed and limited for all services that they could perform as members of the board. That provision is as follows:

"The secretary shall receive an annual salary, which shall be fixed by the State Board of Health. . . . The members of the board shall receive no per diem compensation for their services, but for their traveling and other necessary expenses while employed on the business of the board, shall be allowed and paid"; and

The board was authorized to compensate, out of its funds, any member or members sent to any part of the state to establish quarantines or to make other sanitary investigations.

This is a clear implication, at least, that the fees for licenses were to be the property of the State Board of Health, as were its funds with which it was entrusted

by appropriation, and not the private property of the members of the board for services in granting the licenses, because provision for compensation for all their services as members of the board, as prescribed by the statute, did not include these license fees. This construction of the law is made certain by the amendment to the law against empiricism, enacted March 18, 1904, by which the license fee was increased to $10.00, and it was provided that *out of* these fees, the members of the board should be entitled to receive $10.00 per day and their necessary traveling expenses, and to pay for any necessary assistants. If it be conceded, as contended by the defendant, that these laws and the frequent amendments to each were kept separate and distinct by the legislature, in this act of March 18, 1904, which is an amendment to the law against empiricism, and not to the law regulating the State Board of Health, it is clearly indicated that these license fees do not belong to the members of the board, as compensation for their services in issuing the licenses, but that they were public funds, because authority was granted to the board to pay, out of same, to its members and such assistants as it deemed necessary for the very services defendant claims entitled the members of the board to the whole of these fees.

We, therefore, conclude that the license fees, collected by the State Board of Health, did not belong to the members of the board, but were the property of the Commonwealth, entrusted to the board to be administered for the same purposes and in exactly the same manner as the annual appropriations to it.

(4) We shall now take up and consider the several paragraphs of the petition in the order and under the classification we have heretofore made.

In the first paragraph, it is simply charged that the State Board of Health withdrew from the state treasury, in an improper and illegal manner, funds that were lawfully appropriated and set apart for its use; and that the defendant, as secretary of the board, in disbursing those funds as well as the license fees collected and deposited in bank to the credit of the State Board of Health, paid, or allowed them to be paid, out in a manner contrary to that prescribed by statute, which provided that the funds could only be withdrawn from the treasury quarterly, and upon the presentation of a certification from the board of its items of expense to the Auditor, who

should draw his warrant upon the State Treasurer for such amount.

It is not alleged that any of the disbursements thus made were for an illegal purpose, but only that the manner of withdrawing the appropriations from the state treasury and the disbursement of both the appropriations and the license fees collected were improper and illegal. Even though the manner of the collection and disbursement of these funds was irregular, improper and illegal, unless the funds were devoted to an illegal purpose, the Commonwealth is not entitled, after disbursement, to recover from an officer the funds he may have thus expended. The funds presumably having been devoted to the purposes for which they were appropriated and the state, having received the benefits contemplated from that expenditure, cannot recover from the officer funds that he has expended for the very purpose for which they were appropriated, simply because he may have failed to observe the strict letter of the law with reference to the manner of their disbursement. Flowers v. Logan County, 138 Ky. 59; Clark v. Logan County, 138 Ky. 677; Commonwealth v. Barker, 126 Ky. 200; Commonwealth v. Scarborough, 148 Ky. 561.

The first paragraph of the petition did not state a cause of action, and the demurrer thereto was properly sustained.

(5) In the second paragraph of the petition the right to recover of the defendant is predicated upon the allegation that, in violation of his trust as an officer and in violation of law and without warrant therefor, he paid to certain attorneys for services rendered by them to the board the aggregate sum of $5,740.60.

The allegation that these payments were made by defendant in violation of his trust as an officer of the State Board and in violation of law and without warrant therefor, if construed most strongly against the pleader as they must be upon the demurrer, would seem to state no more than the pleader's conclusion as to what the law was, and hence the pleading was insufficient to charge an illegal disbursement. But, waiving this question, and assuming that the allegation, that the payments were made without warrant, sufficiently charges that they were made without an order of the board to the defendant so to do, the pleading is still bad. That the payment of these attorneys for their services was unauthorized and, therefore, illegal, plaintiff's counsel re-

fers to the decisions of this court in the cases of Coulter v. Denny, 23 R. 1619, and Sims v. Commonwealth, 25 R. 282, wherein it was held that the several statutes, requiring county attorneys, Commonwealth's attorneys, and the Attorney General to advise and represent the Commonwealth and its officers in all legal matters, must be read in connection with each other; and that, when so read, they make one harmonious and perfect statute, providing for legal assistance in all matters in which the Commonwealth is interested; and that no department or officer of the state has any authority to employ or to pay for additional legal services except under express statutory authority; and that no such authority is delegated to the State Board of Health. It is true that no such authority is anywhere given to the State Board of Health to employ or pay for legal services; and that, with one exception, the county attorneys, Commonwealth's attorneys, and the Attorney General are the only sources from which state departments and officers must procure such legal services as they may require in enforcing the law and in the administration of their offices. That exception is contained in the statute prescribing the duties of the Attorney General, by which lawyers, other than the state's attorneys, upon the written request and a statement of the necessity therefor by the Attorney General to the Governor, may be employed by the Governor as additional counsel. The petition does not state that these attorneys were not employed under this provision of the law, and, under the recognized rule of pleading that, where exceptions are allowed in a statute relied upon, the exceptions must be negatived, the petition does not charge that these payments were illegal.

This paragraph of the petition was lacking in an essential averment, to show that the payments were for an illegal purpose, and the court did not err in sustaining a demurrer thereto.

The sixth paragraph of the petition, charging that the defendant paid, or allowed to be paid, in violation of his trust as an officer and in violation of law, to the several members of the board $100.00 each, is demurrable for several reasons. In effect, it alleged only that the defendant did not prevent the payment to the members of the board $100.00 each in violation of law. It is not alleged that he was under any duty to prevent, or that he could have prevented, such allowance and payment to

them; nor is the statement that the payments were made in violation of law anything more than a conclusion of law. The law permitted them to be paid out of these funds for certain services, and no facts are set out which show that the payments were illegal.

(6) In the third and fourth paragraphs of the petition a recovery is sought of the sums of $2,406.88 and $8,932.00, respectively, alleged to have been appropriated and applied by defendant to his own use and benefit, unlawfully and wrongfully and in violation of his trust as an officer and in violation of law, out of funds arising from fees for issuing licenses to physicians. We have held that these fees were the property of the state, and it is here charged that the defendant, on given dates, unlawfully and wrongfully appropriated and applied to his own use and benefit, specified sums that are shown to have been the property of the state. This is a certain and definite charge that the defendant himself appropriated to his own use definite sums of money, upon definite dates, from specified funds of the state, which, as an officer, he was bound to use for a particular public purpose. The allegations charge an illegal use of the funds and could not well have been more definite and certain, unless plaintiff had anticipated and denied such defenses as defendant might interpose, which of course the plaintiff did not have to do; and, in our judgment, the court erred in sustaining the demurrer to these two paragraphs of the petition.

(7) In the seventh paragraph, it is alleged that the defendant and the members of the board entered into an agreement to divide among themselves, upon a percentage basis, the surplus, after paying the expenses of administering the law, derived from license fees collected. It is not charged that there was any such surplus, or that the defendant, or the members of the board, received anything under the agreement; and, manifestly, unless there was such surplus and it was divided according to the illegal agreement alleged, no right to recover existed. Had the defendant confessed as true the allegations of this paragraph, the court would have been unable to render judgment against him for any amount. This is not an equitable suit for an accounting, but is an ordinary action to recover money upon an implied promise to pay. It is, therefore, apparent that the demurrer to this paragraph of the petition was properly sustained.

(8) What is headed the eighth paragraph of the petition is, in no sense, a separate paragraph, and no separate and independent cause of action is attempted to be set up therein. It merely summarizes the preceding paragraphs and asserts the right to recover the aggregate of the items previously set out.

Wherefore, the judgment is reversed and cause remanded for further proceedings consistent herewith.

The whole court sitting.