## City of Princeton v. Baker et al.

(Decided February 10, 1931.)

R. W. LISANBY and ALVIN LISANBY for appellant.

M. K. GORDON, GORDON, GORDON & MOORE, C. A. PEPPER and MARSHALL P. ELDRED for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

Princeton, a city of the fourth class, instituted an action against Maude Head Baker, S. W. Baker, and Gus B. Baker, to recover a large sum of money. Maude Head Baker was the wife of Gus B. Baker, who had been the mayor of the city of Princeton at the same time his wife had been city treasurer and collector. Gus B. Baker was also committee for S. W. Baker, who had been adjudged incompetent to manage his estate, but prior to that event he had become bound as surety upon the official bond of Mrs. Baker as city treasurer. The action was dismissed upon the pleadings, and the city has prosecuted an appeal.

It was alleged in the petition that the offices of collector and treasurer had been combined and Mrs. Baker was elected to fill the offices for a term of two years beginning the first Monday in January, 1928. Her salary was fixed by ordinance at $75 per month. It is alleged that, after the salary was fixed, Mrs. Baker was elected treasurer and gave bond with S. W. Baker as her surety, which was duly approved by the board of council. It was further alleged that the city had no clerk, and that Mrs. Baker undertook to perform the duties of clerk of the city council. The petition further alleged that Mrs. Baker, unlawfully and without legal right, issued to herself a number of checks payable out of the funds she held as treasurer, setting forth an itemized list, giving the date, serial number, and amount of each separate check, amounting altogether to the sum of $1,298.-29. It was then alleged that the money had been taken

by the defendant Mrs. Baker as compensation for her services as treasurer and collector in addition to the regular salary fixed before her election. It was then charged that the defendant Mrs. Baker unlawfully and without right also took from the city funds the sum of $8,588.88, itemized list of which was exhibited, showing dates, serial numbers of checks, and amount of each one. A third list of checks was exhibited, giving the dates, serial numbers, and amounts, aggregating $2,971.22.

It was then alleged that the defendant took from the treasury $1,283.69 as additional compensation without any order or authority from the board of council of the city. The same allegation is made respecting the other items. It is then alleged that a number of checks were unlawfully issued by the treasurer, payable to cash, giving the dates, serial numbers and amounts, aggregating $472.45. It was alleged that these checks were payable to cash and indorsed by defendant Mrs. Baker, except eight checks which were collected by her without any indorsement. It was then averred that all of the checks were collected out of the funds of the city by Mrs. Baker without any order or authority from the board of council. It was also alleged, for the year 1928, that Mrs. Baker and her husband, Gus B. Baker, charged their private electric light and private telephone bills, amounting to $193.10, to the city, and that they were paid from city funds by Mrs. Baker without any order or authority from the council. It was then alleged that Mrs. Baker paid to her husband, Gus B. Baker, out of city funds, the sum of $264.34, giving the dates and serial numbers of the checks. It was averred that these payments were made without the order or authority of the council, and without any record on the minutes.

It was also alleged that Mrs. Baker collected or received a large sum for permits issued by her, and retained $224 thereof. The allegations respecting these fees retained are not very clear. It was not alleged that the fees were lawfully collected. If they were not the city could not recover the amount, as any fees wrongfully collected would be due the parties from whom they were illegally exacted. Harper v. City of Catlettsburg, 102 S. W. 294, 31 Ky. Law Rep. 293; Com. v. Griffy, 203 Ky. 469.

It was charged in the petition that Mrs. Baker illegally paid for floor covering on the office of the mayor, without an order of council or authority so to do. It

was charged that in November, 1929, Mrs. Baker illegally collected a check to herself for $49.01, without any authority or order appearing on the records of the council. It was then charged in general terms that Mrs. Baker, without proper or any orders of council, paid the sum of $31,239.56 to various and sundry persons, firms, and corporations. It was further alleged that the city employed a firm of accountants to audit the books at an expense of $1,014.65, which was made necessary by the failure of Mrs. Baker to audit the accounts and to perform her duties as treasurer.

The petition then proceeded to make a restatement or summary of the facts averred, and the amounts claimed by the city and then followed an allegation that, during the time Mrs. Baker was treasurer and paying out the money theretofore specified, her codefendant, Gus B. Baker, knew of each and all of the payments, knew that Mrs. Baker was countersigning vouchers as clerk, when she was not clerk, knew that she was signing his name as mayor, and knew she was thus making large payments out of the city treasury to herself. He was also aware of the acts of the treasurer in appropriating to herself and to his use and benefit large amounts which belonged to the city, and he failed to protect the city from the loss, or to prevent the improper vouchers from being honored.

Judgment was sought against the defendants for the full amount of the money paid out by the treasurer in the manner stated.

An amended petition was filed before the defendants appeared. The amended petition exhibited in full the report of Ryan & Timmering, expert accountants, who had audited the books of the city. The amended petition also alleged that, after the filing of the original suit, the defendants Gus B. Baker and Mrs. Maude Head Baker had executed a mortgage to the First National Bank and Farmers' National Bank to prefer said banks and to defraud the city. Gus B. Baker filed a motion to require the plaintiff to elect whether it would prosecute the action for breach of contract against Maude Head Baker and her surety, or against the defendant Gus B. Baker for tort. S. W. Baker and Gus B. Baker, his committee, filed a motion to require plaintiff to file the original bond signed by S. W. Baker for Maude Head Baker, to paragraph its petition and amended petition, and to require the pleading to be made certain, definite, and specific.

Defendant also moved to require plaintiff to file checks mentioned in the petition, and to require plaintiff to file the complete audit referred to in the amended petiton.

Plaintiff filed a response to the motion to file the bond to the effect that it was unable to do so, for the reason that, upon retiring from office, Mrs. Baker had failed to deliver the bond to the city, and plaintiff was unable to find it. Mrs. Baker moved the court to strike the amended petition, with which the audit by the accountants was filed. The banks that were made parties by the amended petition filed demurrers thereto, but it does not appear that the court acted thereon. The court entered an order sustaining the motion of Gus B. Baker, ordering the plaintiff to elect whether it would prosecute the action upon the contract and official bond of Maude Head Baker against her and her surety, or against Gus B. Baker for alleged tort. The court also sustained the motion of Maude Head Baker and directed the plaintiff to reform its pleadings, and to condense and make specific its assertion of a cause of action against the defendants, or such of them as it elected to proceed against, and to paragraph its pleadings. All other motions were taken under advisement. On the next rule day, the plaintiff filed a supplementary petition and undertook to state in separate numbered paragraphs the same items mentioned in the previous pleadings. It treated each class of the challenged payments alleged as being a separate cause of action, which resulted in a pleading with eighteen paragraphs; but it brought nothing into the case, that was not claimed in the original petition. The plaintiff proceeded upon the theory that the treasurer was liable for all money paid out without an order of the council duly entered upon the records; that the treasurer could pay out no money of the city except upon warrants drawn by the mayor or chief executive of the city and countersigned by the clerk of the board of council (Ky. Stats., sec. 3555); that the husband of the treasurer, who was mayor of the city, was liable jointly with her for amounts paid to him, and for sums paid to others in so far as he consented to or aided in the misappropriation; and that the surety upon the bond of the treasurer was liable to the full amount of the penal sum named therein for money wrongfully paid out by the treasurer. The motion to elect was renewed after the supplementary petition was filed, and a motion

made to require the plaintiff to elect whether it would proceed upon the original or upon the amended petition.

Maude Head Baker renewed her motion to require plaintiff to reform, condense, paragraph, and make more explicit, its petition. The court required the plaintiff to elect whether it would proceed against Maude Head Baker and her surety on the contract, or against Gus B. Baker in tort; and, when the plaintiff declined to elect, the court directed the action to proceed against Mrs. Baker and her surety, and dismissed the action as to Gus B. Baker. The Court also made an order sustaining the motion to require the plaintiff to reform, condense, paragraph, and make specific its petition, so as to state its cause of action against Mrs. Baker and her surety clearly, concisely, and specifically, without legal conclusions or extraneous or superfluous matters.

The plaintiff declined to comply with the order, but stood upon its pleadings as presented, and the court dismissed the action. It is from these various orders that the appeal is prosecuted.

The office of city collector is created by section 3545, Ky. Stats., and the council may, by ordinance, combine the duties of the collector with those of the treasurer. The office of treasurer is created by section 3554 Ky. Stats., and the officer is required to give bond to the city with one or more sureties to be approved by the board of council, covenanting that he will faithfully keep and account, according to law, for all funds that may come to his hands as treasurer, and that he will at any time when called upon by the board of council settle his accounts as treasurer.

Section 3555 is as follows:

"It shall be the duty of the treasurer to receive and safely keep all money belonging to the city, and to pay the same as directed by order of the board of council; but he shall only pay out money upon warrants drawn by the mayor or chief executive and countersigned by the clerk of the board of council. He shall keep a fair and accurate account of all his receipts and disbursements, showing when, from whom, and to whom, and for what purpose, and on what account such moneys were received or paid, and shall exhibit the same; and on the first regular meeting of each month send his monthly report to the

city council, whose duty it shall be to have same credited (sic, audited) by the finance committee. Every three months he shall make a financial exhibit, giving an itemized statement of all receipts, the sources of such receipts, together with an itemized statement of all disbursements, . . . and have the same spread at large upon the records of his office, and shall annually prepare such an exhibit and have the same published in some daily or weekly newspaper having a general circulation in said city. He shall perform such other duties as may be required of him by ordinance not inconsistent with this act and shall receive such compensation for his services as the said board may provide.''

In so far as the petition alleged that Mrs. Baker had taken from the funds of the city additional compensation for herself, a cause of action was stated. The Constitution provides that the salaries of public officers shall not be changed during the term for which they were elected (section 235), and it is provided also that the compensation of no city, county, town, or municipal officers shall be changed after his election or appointment, or during his term of office (section 161). If Mrs. Baker collected money or fees in excess of the compensation fixed by law before her election, it was illegal, and she was liable in an action for its recovery. Fox v. Lantrip et al., 169 Ky. 759, 185 S. W. 136; Shipp v. Rodes, 196 Ky. 523, 245 S. W. 157. Even if the payment had been duly authorized by the board of council, it could be recovered, since such payment was forbidden by the Constitution. If the compensation was for some service outside of her official duties, for which compensation could be allowed, it was a matter of defense. Rogers v. Slaton, 130 Ky. 423, 113 S. W. 509. The petition does not disclose such a case.

In so far as the petition alleged unauthorized payments by the treasurer to her husband, Gus B. Baker, it stated a cause of action against both, since they were jointly liable upon an implied contract for the return of any money unlawfully withdrawn by them from the treasury. 46 C. J. p. 1042, sec. 324; Com. v. Carter, 55 S. W. 701, 21 Ky. Law Rep. 1509; Clark v. Logan County, 138 Ky. 676, 128 S. W. 1079. The surety upon the bond of the treasurer is liable for any breach of the terms of the bond, and, whilst the pleading does not aver in so many words a breach of the bond, it does allege facts

showing an illegal appropriation of money from the treasury, which constitutes a breach of the bond. Such allegations are adequate. Inter-Southern Life Ins. Co. v. Duff, 184 Ky. 227, 211 S. W. 738; National Surety Co. v. City of Louisville, 165 Ky. 42, 176 S. W. 364; Giltner v. McCombs Producing & Ref. Co., 190 Ky. 601, 228 S. W. 8; Morgan v. Baker, 147 Ky. 485, 144 S. W. 378. The cause of action in this case consisted of the right of the city to recover the money withdrawn from the treasury by Mr. and Mrs. Baker, which they are charged with doing in violation of an official duty to the city. Mrs. Baker was liable for the entire amount she caused to be withdrawn wrongfully from the treasury. Shipp v. Rodes, 196 Ky. 523, at page 534, 245 S. W. 157, and authorities cited therein. Mr. Baker, as mayor of the city was jointly liable with the treasurer to the extent of the money improperly received by him, and to the extent of money taken with his assistance, by signing or permitting the signing of his name to unauthorized vouchers. Husbands v. Smith's Adm'r, 14 B. Mon. 208. The surety was liable upon his bond for any failure of the treasurer to keep and to account, according to law, for any funds that might come into her hands as treasurer. 46 C. J. p. 1041; 22 R. C. L. p. 463, sec. 128 page 507, sec. 191; Stephens v. City of Ludlow, 159 Ky. 729, 169 S. W. 473; Russell v. Tate, 52 Ark. 541, 13 S. W. 130, 7 L. R. A. 180, 20 Am. St. Rep. 193.

In City of Shelbyville v. McGrath, 199 Ky. 238, 250 S. W. 976, it was held that a city was entitled to recover from the treasurer a sum appropriated by him to his own use, which he claimed was due him. It was held that a city official was not authorized to pay himself, and, if he appropriated money otherwise than through the regular procedure, he was liable in an action for its return. The treasurer has no right to pay out any money except upon warrants drawn by the mayor or chief executive of the city and countersigned by clerk of the board of council. Ky. Stats., sec. 3555. The mayor and clerk have no right to issue warrants against the treasurer, except when authorized by law and after a regular appropriation by the city council. Section 3490, subsec. 5; Barron v. Kaufman, 131 Ky. 642, 115 S. W. 787. It is true the Code provides that, if there be more than one cause of action, each must be distinctly stated in separate numbered paragraphs, and it is the duty of the court, upon or without motion, to enforce the provision, and to that end it may dismiss an action without prejudice, or strike part

of a pleading or require an amendment. Section 113, subsec. 3, Civil Code of Practice.

Where a petition contains several paragraphs that relate to a single cause of action, and they are not inconsistent, there is no need for paragraphing. Thus in a negligence case, the cause of action is the inquiry, and it may be predicated upon as many acts of negligence as the plaintiff may conceive co-operated to bring about the result. Fagg's Adm'r v. L. & N. R. Co., 111 Ky. 30, 63 S. W. 580, 23 Ky. Law Rep. 383, 54 L. R. A. 919; Bartram v. Ohio & B. S. R. Co., 141 Ky. 100, 132 S. W. 188; Stephens v. Schadler, 182 Ky. 833, 207 S. W. 704; Ford v. Providence Coal Co., 124 Ky. 517, 99 S. W. 609, 30 Ky. Law Rep. 698; L. & N. R. Co. v. Gamble's Adm'x, 156 Ky. 91, 160 S. W. 795.

If several causes of action are asserted, they should be presented in separate paragraphs, and, whilst it has been stated that each paragraph must be complete within itself (Louisville & N. R. Co. v. Adams, 148 Ky. 513, 147 S. W. 384), it is sufficient to incorporate by reference without repeating allegations common to each cause of action (Tracey v. C. M. McClung & Co., 215 Ky. 632, 285 S. W. 956). The City Code of Practice provides that pleadings must be in the English language and as concise as possible consistently with clearness (section 115); yet a pleader is not confined to any particular form. It is improper to plead matters of evidence (Civil Code of Practice, sec. 119) or facts mutually destructive (Hicks v. Oak's Adm'r, 233 Ky. 27, 24 S. W. (2d) 917), but such errors may be corrected by appropriate motions (Owsley County Dep. Bank v. Burns, 196 Ky. 359, 244 S. W. 755).

This action was not against the officers of a municipal corporation, but it was an action against former officers to compel an accounting for wrongs charged to have been done in an official capacity. So far as the fees of the accountants are concerned, it may be that no cause of action respecting them was alleged, but that matter could be reached by a motion to strike the allegations. It is not now before us. There are numerous allegations concerning payments made without any authority appearing on the records of the city council. The city speaks by its records (Ky. Stats., sec. 3487; City of Prestonsburg v. Mellon, 220 Ky. 808, 295 S. W. 1064; C. & N. Ry. Co. v. City of Olive Hill, 231 Ky. 65, 21 S. W. (2d) 127; Hoskins v. Pitman, 229 Ky. 260, 16 S. W. (2d) 1052),

and, in the absence of a record, there was no authority to withdraw any money from the treasury.

Irrelevant and redundant matter in a pleading shall be stricken by the court upon or without motion (Civil Code of Practice, sec. 121), and surplusage either of parties or of allegations may be eliminated upon a motion directed to that end. Bertram v. Wayne County, 223 Ky. 456, 3 S. W. (2d) 1083; Young v. North East Coal Co., 194 Ky. 520, 240 S. W. 56; Hale v. Grogan, 99 Ky. 170, 35 S. W. 282, 18 Ky. Law Rep. 46; Harper v. Howton 194 Ky. 840, 241 S. W. 329.

If a cause of action in several paragraphs be defectively stated, the question must be raised by demurrer and not by motion to strike, which does not fulfill the office of a demurrer. Hardy v. Russell, 181 Ky. 287, 204 S. W. 145; L. & N. R. Co. v. Horton, 187 Ky. 617, 219 S. W. 1084.

In the present case there was no misjoinder of causes of action or of parties and a motion to elect did not lie. Civil Code of Practice, sec. 83; Bonney v. Reardin 6 Bush 34; Jones v. Johnson, 10 Bush, 649; Gregg v. Woods, 3 Ky. Law Rep. 526.

The audit by the accountants was filed with the amended petition. It was not such a writing as constituted the foundation of the action and required to be filed with the petition. Civil Code of Practice, sec. 120. Nor was it a writing that might be relied upon as evidence which is permitted to be filed by section 128 of the Civil Code of Practice. It resembled the document referred to in Commonwealth v. McCormack, 177 Ky. 474, 197 S. W. 977, and could be used in the case only in connection with the testimony of a competent witness.

The motion to make the petition definite and certain was itself indefinite, since it did not indicate in what respects the petition was indefinite, or in what particulars it should be made more certain. Francis v. Sturgill, 163 Ky. 650, 174 S. W. 753. It constituted a general invitation to search the record for allegations that might be subject to such a motion but was not itself directed at any particular averment. The order of the court was equally general, and gave no information to the pleader as to how by an amendment the views of the court might be met.

It is argued that the petition was bad in so far as it sought recovery of money paid to various and sundry

persons without authority of the board of council, in failing to aver that the city did not owe the amounts so paid.

In the case of Com. v. McCormack, 177 Ky. 474, 197 S. W. 977, relied upon as sustaining the argument, it was held that a petition was deficient because it did not allege facts showing that the payments were not made to discharge valid obligations. But in that case the disbursements challenged may have been to pay valid obligations, and, if the money had been devoted to the purpose for which it was appropriated, and the commonwealth received the benefit, it would have no rightful claim against the officer because he merely failed to pursue the letter of the law as to the manner of disbursement; but in that case the appropriation was made for a specific purpose to be performed in a certain manner, and the petition merely alleged that the manner of disbursement was not followed.

It is alleged in this case that there was no valid or other appropriation, and that the funds were disbursed without any authority. If it be shown that the city owed the parties paid, a different question will be presented. Flowers v. Logan County, 138 Ky. 59, 127 S. W. 512, 137 Am. St. Rep. 347; Com. v. Scarborough, 148 Ky. 561, 147 S. W. 31; Com. v. Barker, 126 Ky. 200, 103 S. W. 303, 31 Ky. Law Rep. 648; City of Tacoma v. Lillis, 4 Wash. 797, 31 P. 321, 18 L. R. A. 372; Badeau v. U. S., 130 U. S. 439, 9 S. Ct. 579, 32 L. Ed. 997.

The legal conclusions found in the pleadings may be treated as surplusage and stricken on a motion specifying the allegations deemed improper, or they may be disregarded. Anderson's Adm'r v. Granville Coal Co., 205 Ky. 111, 265 S. W. 472. But a general motion, such as that presented in this case, does not require the court to search the pleadings to ascertain whether some particular allegation might be found to constitute a legal conclusion, nor does it enable the court to require the pleader to try his hand again, with only the same general directions given by the Code.

It is apparent, from what has been said, that the court erred in sustaining the motions and in dismissing the action.

The judgment is reversed, with directions to overrule the motions, and for proceedings not inconsistent with this opinion.