## Shipp, for Use, etc. v. Rodes, et al.

## Shipp, for Use, etc. v. Bradley, et al.

(Decided June 23, 1922.)

## Appeals from Fayette Circuit Court.

1. Officers—Salaries or Compensation of Sheriffs.—Section 246 of the Constitution per se interdicts the retention of more than $5,000.00 per annum as compensation for the official services of the sheriff of the county, independent of the compensation of his legally authorized deputies and assistants.

2. Officers—Salaries or Compensation of Sheriffs.—Section 246 of the Constitution is a restrictive provision and may be enforced by the courts as against a sheriff, without the aid of legislative action defining the number of deputies that he may lawfully employ and fixing the respective salaries to be paid for their services.

3. Constitutional Law—Violation of Restrictive Provision.—The absence of a penalty for the violation of a restrictive provision is a circumstance tending to support the view that the provision is not self-executing, but it is by no means a conclusive test and where the provision may be enforced independent of legislative action it is self-executing.

4. Officers—Salaries and Number of Deputies.—The enforcement of section 246 of the Constitution could be facilitated by legislative action fixing the number of authorized deputies of a public officer and limiting their respective salaries, but the absence of particularly defined limits does not impair responsibility for violation of the law or render the provision inoperative as to a sheriff,

since his statutory duties, if complied with, open the door to investigation of his records and afford means by which the power of the courts may be invoked to compel a faithful accounting of the funds that he receives as salary and a proper reporting of the expenses incurred in the economic administration of his office.

5. Counties—Employment of Deputies by Sheriffs—Salary Limitations.—The fiscal court, as fiscal agent of the county, is charged with the duty of protecting the county from the extravagant employment of deputes by a sheriff, or the payment of exorbitant salaries to employees and other waste in the administration of his office. The duties of the fiscal court if properly discharged, in connection with the inherent power of the courts to compel obedience to the spirit and purposes of section 246 of the Constitution, afford ample means of enforcing the salary limitations of that provision.

6. Counties—Action by Taxpayer for Benefit of County.—The general rule is that a taxpayer cannot maintain an action against a county official for the benefit of the county or on behalf of all other taxpayers similarly situated, until he has first demanded of the fiscal court that it institute the suit. But where the facts are such as justify the taxpayer in assuming that the members of the fiscal court will not act or where they have acquiesced in and assented to the illegal acts the taxpayer is not required to demand of the fiscal court that it bring the suit, but may institute the suit for the benefit of himself and the other taxpayers of the county.

7. Officers—Payment of Money on Illegal Orders—Liability of Officers.—County officers and members of the fiscal court of a county are liable to the county for money which has been converted or paid out on orders or warrants illegal on their face or the invalidity of which could have been ascertained by the exercise of reasonable diligence.

8. Officers—Sheriffs and Constables—Accounting for Commissions on Taxes.—A sheriff is a county officer, primarily acting for and on behalf of the county, and as such is required to account to the county for commissions on county taxes and fees received from litigants of the county, in excess of what he is allowed by law to retain as salaries for himself and his legally authorized deputies.

9. Counties—Excessive Compensation of Sheriff.—Fees representing the cost of litigation chargeable to and adjudged against the litigants of a county and paid to the sheriff as compensation for his services in the litigation, in excess of the amount that he is legally authorized to retain as salaries for himself and his authorized deputies and assistants, belong to the county and should be turned into the county treasury.

N. B. HAYS for appellant.

HUNT, NORTHCUTT & BUSH, HUMPHREY, CRAWFORD & MIDDLETON, GEORGE C. WEBB and HAZELRIGG & HAZELRIGG for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

These appeals involve the right of a resident and taxpayer of Fayette county to maintain an action on behalf of the county for the recovery of fees and commissions paid to and retained by the sheriff as salary, in excess of the amount that he and his legally authorized deputies and assistants are authorized to receive under section 246 of the Constitution.

Two separate suits were brought by appellant in November, 1921, against Thomas C. Bradley, sheriff of the county for the years 1914 to 1917 inclusive, and J. W. Rodes, sheriff for the years 1918, 1919 and 1920, to recover from them and their sureties the compensation received by them by reason of and during their incumbency in office in excess of $5,000.00 a year and such additional amounts as were lawfully payable to their legally authorized deputies and assistants. The members of the fiscal court of Fayette county and the county judge were made parties defendant. They were charged with liability for the excess salaries, and in the Rodes case an order was asked restraining and enjoining the fiscal court from thereafter paying or allowing Rodes for official services any sum in excess of $5,000.00 a year.

The petitions are voluminous. The grounds for the relief in each case are the same and the two cases were heard and decided together. In this opinion we shall discuss the points raised in the Bradley case which are also decisive of the Rodes case. The allegations of that petition material to a determination of the questions presented are: That plaintiff is a resident and taxpayer of Fayette county and as such instituted this action for the use and benefit of all other taxpayers of the county; that T. C. Bradley was elected sheriff of Fayette county in 1913, and in January, 1914 duly qualified as sheriff and executed bond as required by law, with the National Surety Company as surety, and that he acted as sheriff of the county for the years 1914 to 1917 inclusive; that it was his duty as sheriff to collect and account for all taxes, state and county, all fees, penalties, commissions and per diem salaries paid to him, as required by certain denominated sections of the Kentucky Statutes, and to keep an accurate and correct account of all funds disbursed by him and of all fees, salaries, and commissions received in his official capacity, and each year to make a settlement with a commissioner appointed by the fiscal

court showing the amount of such fees, salaries and commissions and upon the approval and confirmation of the settlement by the county court to have the same recorded; that the fees, salaries and commissions received by the defendant for his services as sheriff constituted a public fund out of which he was entitled to an annual compensation of $5,000.00, independent of the compensation of his legally authorized deputies and assistants as fixed and provided by law, and that the balance of the fees, salaries and commissions, after deducting his compensation and that of his legally authorized deputies and assistants, was a fund belonging to the taxpayers of Fayette county.

It was averred that for each of the years that defendant held the office of sheriff of Fayette county he received as salary in commissions and fees, in addition to the compensation allowed his deputies and assistants, a sum in excess of $5,000.00; that the excessive salaries so received were allowed by the fiscal court of Fayette county and paid from the treasury of the state of Kentucky for official services rendered in the collection of county and state taxes, in addition to which he also received large sums from the litigants of Fayette county on account of official services rendered; that the unlawful salaries were wrongfully paid and allowed to and were wrongfully and illegally demanded by defendant and converted from the funds of Fayette county; that the members of the fiscal court and the county judge wrongfully allowed defendant to receive and retain as compensation for official services sums in excess of that authorized by law, and that they had neglected for more than a year to file or cause to be filed any suit or proceeding to recover the excessive sums illegally appropriated to the salaries of defendant and his legally authorized deputies and assistants; and that each member of the court had voted to allow the illegal payments to defendant and was hostile to the prosecution of an action to compel defendant to comply with the law and account to Fayette county for the funds thus diverted from its treasury. He further alleged that he had requested the county attorney to bring an action to recover the sums illegally allowed to and held by the defendant, but the county attorney had failed and refused to bring such an action.

The year 1914 is illustrative of the claim asserted. For official services for that year it is alleged that

Bradley received warrants from the Auditor of Public Accounts representing commissions on taxes collected for the state and fees for the summoning of witnesses, conveying convicts and prisoners, etc., in the sum of $12,090.74; that he received from the treasurer of Fayette county for the collection of county taxes and as fees for other official services the sum of $13,515.04; that for his official services during that year rendered to litigants and the public he collected and received more than $6,000.00; and that in all for the year 1914 he received as fees, per diem, salary and commissions $26,616.83 in excess of the $5,000.00 salary that he was authorized to receive under section 246 of the Constitution.

Bradley and the American Surety Company filed special demurrers to the petition asserting that (1) the court had no jurisdiction of the subject matter of the action, (2) the plaintiff did not have legal capacity to institute and prosecute the suit, and (3) there was a defect of parties plaintiff. The county judge and the respective members of the fiscal court also filed special demurrers on the ground that the plaintiff did not have legal capacity to prosecute the suit, and the members of the fiscal court filed general demurrers. The special demurrers were sustained by the trial court and a written opinion delivered which is made a part of the record. These rulings are in review on this appeal.

The argument in support of the judgment rests on the three grounds set out in the demurrers. The first insistence, which if sustained disposes of the case, is that section 246 of the Constitution is not self-executing, and that no method or machinery has been created by which the provision can be made effective.

The section reads:

"No public officer, except the governor, shall receive more than five thousand dollars ($5,000.00) per annum as compensation for official services, independent of the compensation of legally authorized deputies and assistants, which shall be fixed and provided for by law. The general assembly shall provide for the enforcement of this section by suitable penalties, one of which shall be forfeiture of office by any person violating its provisions."

The question is, does this provision *per se* interdict the retention of more than $5,000.00 per annum as compensation for the official services of the sheriff, independent of the compensation of his legally authorized

deputies and assistants, or is it only directory requiring legislative action to bring it into full operation and effect?

The general rule is that prohibitive and restrictive constitutional provisions are self-executing and may be enforced by the courts independent of any legislative action. Among some of the provisions held to be self-executing are, those limiting the power of any of the departments of the government and inhibiting the performance of particular acts by an officer; prohibitions against foreign corporations doing business within the state without having a place of business or an agent therein for service of process; provisions making banking officers individually liable for deposits received after knowledge of the insolvency of the bank; a prohibition against the enactment of laws authorizing lotteries and commanding the enactment of laws prohibiting the sale of all lottery tickets; provisions making all contracts for a rate of interest above a certain per cent usurious and requiring the legislature to prescribe penalties for its violations; and provisions that property shall be assessed for taxes under general laws and by uniform rules according to its value. (Washingtonian Home v. Chicago, 29 L. R. A. 798; American Union Telegraph Co. v. Western Union Tel. Co., 42 American Reports 90; Farmers L. & T. Co. v. Funk, 68 N. W. 520; Bass v. Nashville, 33 American Decisions 154; Quinlan v. Smye, 50 S. W. 1068; Louisville, etc., R. R. Co. v. Barbourville, 105 Ky. 174; Lincoln Street R. R. Co. v. Lincoln, 84 N. W. 803; Davis v. Burke, 179 U. S. 399.) The absence of a penalty for the violation of restrictive provisions is a circumstance tending to support the view that they are not self-executing but it is by no means a conclusive test, for, as stated, the great weight of authority is that they are self-executing, and may be enforced by the courts independent of legislative action. (See note to Willis v. St. Paul Sanitation Co., &c., 16 L. R. A. 281.)

But it is asserted that this provision is not self-executing because there is no limit to the number of deputies that a sheriff may employ, and consequently there is no way of determining what he shall pay to deputies and assistants. In support of that position it is pointed out that section 53 of an act of the general assembly of 1891-2-3 (section 1776 of Kentucky Statutes) made effective the provision as to sheriffs in counties having a population between 40,000 and 75,000, but by section 2

of the Act of March 2, 1898, that provision of the statute was repealed. It is, therefore, said that the repeal of the statute left the constitutional provision ineffective as to Fayette county. Neither the passage nor the repeal of the Act of 1893 (section 1776 of Kentucky Statutes) changed or altered the effect of the provision, if it is self-executing. It was and is, of course, competent for the legislature to fix salaries and designate the number of allowable deputies within the terms of section 246 of the Constitution, and also to provide the method and means of compelling obedience to the restrictions established. That was the effect of the Act of 1893, and it may be granted that by that Act a more specific and definite rule for the application of the section was brought into existence and likewise by its repeal the enforcement of the provision is made more difficult, but that concession does not signify that the provision is not self-executing, or that there exists no machinery for its enforcement. Nor did the passage of the Act of 1893 indicate that the provision contemplates legislative enforcement. That construction is not to be inferred from the mere passage of the Act, for at best it was but a legislative construction, not binding upon this court which in the end must determine the question for itself.

Stone v. Wilson, 19 Ky. Law Reporter 126, is referred to as authority for the contention that legislative action prescribing the number and compensation of the sheriff's deputies and assistants is necessary before the constitutional provision can be given effect. We do not consider the Stone case controlling. The constitutionality of section 1776 of Kentucky Statutes (now repealed) was under consideration in that case, and it was contended that the Act was special legislation within the meaning of section 59 of the Constitution. The question presented here was not decided in that case and the language of that opinion, adapted to the argument made in this case, was indecisive of any question there determined. All that was decided in that case was that it was competent for the legislature under section 246 of the Constitution to delegate to the county judge authority to fix the salaries of the deputies of the county clerk. The opinion is manifestly sound but has no bearing on the case at bar.

The sheriff is allowed 10% commission on the first $5,000.00 of state and county taxes collected and 4% commission on the residue (sections 1729 and 4168, Ken-

tucky Statutes), and he is allowed fees for certain other
services performed by him in discharging the duties of
his office.   Obviously his right to retain these commis-
sions and fees as salary is subject to the inhibition that
he shall not receive more than $5,000.00 per annum as
compensation for his official services, independent of
the compensation of legally authorized deputies and as-
sistants. This provision of the Constitution is manda-
tory; it is the law and it is the duty of the courts to en-
force it—if need be to devise means, so far as within
their power, to compel an accounting from every public
officer who seeks to evade the standards of compensation
that it has fixed. That the procedure could be facilitated
by legislation fixing the number of authorized deputies
and limiting their respective salaries is certain, but the
absence of particularly defined limits should not and
does not impair responsibility for violation of the law.
This avowed public policy of the state should not fail,
unless it is imperative that it be declared ineffective be-
cause of inadequate means of enforcing it, and this we
do not admit.

It is undoubtedly true that the framers of the Consti-
tution contemplated that the general assembly would fix
the salaries of deputies and assistants and provide for
the enforcement of the provision ''by suitable penal-
ties;'' and, as we have said, legislation limiting the num-
ber of deputies and their respective salaries would ma-
terially assist in enforcing the provision, in that un-
questioned standards would be established by which
every public officer's responsibility could be definitely
measured. But the failure of the legislature to act does
not deprive the inhibition of its force and effect, except
in so far as its effectiveness may be impaired by the dif-
ficulty of ascertaining the amount of fees and commis-
sions collected as salary, the number of deputies neces-
sary to conduct the office and what are reasonable salaries
to be paid for their services. These difficulties are not in-
surmountable, for indeed, it seems to us, the statutory
duties of the sheriff, if complied with, open the door to
investigation of his records and afford means by which
the power of the courts may be invoked to compel a faith-
ful accounting of the funds that he receives as salary and
a proper report of expenses incurred in the economic ad-
ministration of his office. The law allows him to appoint
his deputies with the approval of the county court (4141
Kentucky Statutes), and he is required to make a full

report to the fiscal court of all funds received by him, including commissions and fees. That he may employ as many deputies and assistants as are reasonably necessary to the efficient and economic administration of his office is his undoubted right. But the fiscal court should and must know the necessities of his office as to salaries paid and as to deputies and assistants employed, and it is charged, as fiscal agent of the county, with the duty of protecting the county from the extravagant employment of deputies, the payment of exorbitant salaries and other waste in the administration of the office. The statutory duty of the sheriff fully to account for all funds that he receives in his official capacity, the authority of the fiscal court in administering the affairs of the county to supervise his accounts, and the inherent power of the courts to compel obedience to the spirit and purposes of the law, afford, in our opinion, ample means of enforcing the limitations of section 246 of the Constitution so far as the office of sheriff is concerned.

Coming to the ground of demurrer that attacks the right of the plaintiff to institute and prosecute this suit, we are confronted with the inquiry, has he such an interest in the subject matter as invests him with legal capacity to recover on behalf of the county the funds illegally held by the sheriff? So closely associated with that inquiry that the two may be considered together is the question raised by ground three, that is, is there a defect of parties plaintiff? A pertinent fact suggested by the latter question is that plaintiff seeks to recover funds derived from three separate sources: (1) commissions for collecting county taxes, (2) commissions for collecting state taxes, and (3) fees paid by litigants of Fayette county.

It is earnestly contended that, inasmuch as the funds were derived from the three sources indicated, the surplus in the hands of the sheriff, if there is surplus and if it does not belong to him, should be repaid the state, county and litigants in proportion to the amounts respectively collected, and consequently there is a defect of parties plaintiff. Granting for the present that the contention is sound and that appellant cannot recover all the surplus fees and commission derived from the three sources, if he is entitled to recover on behalf of the county any part of them it inevitably follows that

there was not a defect of parties plaintiff and the special demurrers should not have been sustained.

It is said that a suit to recover commissions received for collecting county taxes must be brought by the fiscal court of the county, and that a taxpayer has not the right to institute a suit until he has first demanded of the fiscal court that it sue and that court has declined to perform its duty. Sparks v. Robinson, 115 Ky. 453, and other cases are relied on as decisive of the contention. The Sparks case, *supra,* recognizes the right of one taxpayer to sue for all similarly situated to redress a grievance common to the class of which he is a member. However, it was also decided in that case that the one essaying to act for all must be a fair representative of the class. There the court applied the maxim, *de minimis non curat lex,* and held that the plaintiff, whose interest was only 3 cents, would not be permitted to annoy the courts and the people by raising vexatious litigation for academical exploitation at other people's expense. This case is entirely different, for appellant is not seeking to raise any question at the expense of the taxpayers of the county or to impose upon them the burden of conducting this litigation. If the allegations of his petition are true, there is involved a substantial sum which a former county official is wrongfully withholding from the county. Appellant, as a taxpayer, is interested in the recovery of those funds for the county. He has demanded that the county attorney bring a suit to effectuate that purpose but that official has refused to act. The members of the fiscal court, as he alleges, knew at the time that these funds were paid to appellee that they could not be legally retained by him but belonged to the county. In view of these allegations appellant can not be denied the right to prosecute this action for the county.

Woodruff v. Shea, 152 Ky. 657, does not support appellee's contention; on the contrary it is authority for this suit. It was made plain in that opinion that the fiscal court is a court of limited power and that it has no right to appropriate or expend funds of the county or to pay for official services rendered, except as provision is made therefor by law. No demand to bring the suit was made on the fiscal court in that case. However, the denial of the relief asked was not due to the absence of a demand on the fiscal court, but to defective averments which are not to be found in this case.

Commonwealth, etc. v. Tilton, 20 Ky. Law Reporter 1050, announces the general rule that until the fiscal court refuses to institute suit for the benefit of the county no one else can do so. But there the facts were not such as justified the plaintiff in assuming that the fiscal court would not act on behalf of the county. In Mills v. Landtrip, 170 Ky. 81, it appeared that the plaintiff had filed a written request with the fiscal court to bring the action and the court had failed to do it. That failure was regarded as equivalent to a refusal and this court said: "Not only should the courts of justice not discourage or frown upon the efforts upon the part of the citizens of the state to compel a strict observance by public officials of their duties and obligations, but upon the other hand they ought so far as authorized by law encourage such practice. No better illustration of the wisdom of the rule of practice thoroughly established in this state permitting citizens and taxpayers to maintain an action for the recovery of illegal payments to officials can be found than the case at bar." The opinion commends the qualities of good citizenship displayed by the plaintiff in that action in instituting a suit that the fiscal court had failed and refused to institute.

Williams for use, etc. v. Stallard, 185 Ky. 10, also lays down the rule that an action is not maintainable by a taxpayer without first demanding that the fiscal court bring it. But in that case there was no averment in the petition of any application to the fiscal court or the county attorney or any officer or agent of the county to file the suit or to take any steps looking to a correction of the delinquency complained of. Here appellant demanded of the county attorney that he institute the proceeding and the county attorney refused. Furthermore, if the allegations of the petition be true, it would be a useless procedure to make demand on the fiscal court, for every member of that court has assented to the wrongful retention of the funds.

The practice is almost universal that where the persons, in whom the duty and primary right rest to represent the county, will not perform their duty from any cause, an interested person such as a taxpayer may sue in behalf of himself and all others similarly situated. A case of that kind is made out where it is shown that the illegal acts constitute a charge against those whose duty it is to sue or that they have participated in the wrong. It cannot be assumed in that state of case that they will

impeach their own transactions and confess that they have misused their positions and squandered the revenues of the county, even though they are not guilty of any bad faith. The taxpayer, therefore, is not required to make the demand upon them, but may institute the suit for the benefit of himself and the other taxpayers of the county.

Another well established rule is, that a county officer is liable to the county for money which he has converted or paid out on orders or warrants illegal on their face or the invalidity of which he could have ascertained by the exercise of reasonable diligence. And he may be enjoined from unlawfully paying out funds of the county and also be held liable on his official bond to the extent of the illegal payments that he has made. (11 Cyc. 441; 22 R. C. L. 458, 507.; Henderson v. City of Covington, 14 Bush 312; Patton v. Stephens, 14 Bush 324; Littler v. Jayne, 16 N. E. 374; County Court v. Duty, 87 S. E. 256; Board of Supervisors v. Allen, 2 N. E. 459; Northern Trust Co. v. Snyder, 90 American State Reports 867; Stone v. Bevans, 97 American State Reports 506.)

As we construe the authorities referred to and apply them to the facts alleged, we are forced to the conclusion that the failure to make a demand on the fiscal court of Fayette county to institute a suit to recover the commissions alleged to have been received for collecting county taxes and to be illegally held by appellee was not a condition precedent to the right of appellant to bring this action; and, similarly, his right is complete, as against the members of the fiscal court, since if the allegations of the petition are true every member of that court voted to allow appellee to retain the commissions with full knowledge of the illegality of his acts.

As to the funds drawn from litigants, it is contended that appellant is not one of that class and in consequence cannot maintain an action to recover that fund. The contention assumes that the fees of the sheriff received from that source in excess of what he is authorized to retain as salaries revert to the litigants by whom they were paid and they alone have authority to maintain an action to recover that fund. This conclusion disavows the important consideration that the fees were collected under the law. They represent the cost of litigation, chargeable to and adjudged against the litigants. That they were rightfully collected cannot be doubted and it would seem to follow that they are not refundable to

the persons paying them. Where a sheriff is paid a salary he usually receives fees for his services, but the law requires him to account for and pay into the county treasury all fees received or the excess of such fees over the amount allowed him for his salary and expenses. (35 Cyc. 1611. At common law the sheriff was bound to perform his duties gratuitously. (24 R. C. L. 1001.) The statutes of this state allow the sheriff, as such, fees for performing certain services and these are alleged to have amounted to $6,000.00 for the year 1914. These fees as well as the commissions received from collecting taxes, in so far as they may be applied to salaries, are obviously subject to the limitation contained in section 246 of the Constitution. The fees paid to the appellee by litigants in excess of the constitutional limitation are certainly not a part of the compensation of his office. Such fees are required by the statutes to be paid. They are a contribution to the expenses of the office of sheriff and to the maintenance of the business of the county in consideration for services rendered. Hence the right of the county as against the litigants would seem paramount. It is certainly fair to say that as between the two the claim of the county is superior.

The sheriff is a county officer primarily, acting for and on behalf of the county, and as such ought to be required to account to the county for the fees collected from litigants therein, in excess of what he can lawfully retain for salaries. He is required to give bond, and, under section 4560 of Kentucky Statutes, he is authorized by and with the approval of the county court to appoint his own deputies. At the expiration of his term of office it is his duty to make a full and complete settlement of his accounts as sheriff, and section 4140 of Kentucky Statutes requires him to keep a record of all money that is paid to him, to enter the same in the book that he must keep for that purpose, and to specify therein the amount and on what account it is paid. It is also his duty to report under oath to the county court on the first day of May, June, July, August, September, October, November and December of each year the amount of state and county taxes he has collected, together with all fines, forfeitures, or money on any other account that shall have been received or collected by him, showing in his report the amount collected for and belonging to each particular fund and the disposition of the revenues collected. This

report must be filed and recorded in a separate book furnished by the county clerk for that purpose, which shall be open for inspection in the office of the county clerk. (4147 Kentucky Statutes.) He must settle his accounts for county and district taxes at such times as the fiscal court may deem proper, and the court is required to appoint a competent person to settle the accounts, and the report of settlement must be filed in the county clerk's office. Section 4137, Kentucky Statutes, imposes upon the sheriff the duty of keeping an accurate account of all money received by him, showing the amount thereof, the time when and from whom received and on what account, also of all disbursements made by him. Section 932 of the statutes requires that on the first day of May, and every sixty days thereafter, all money in his hands collected by him for the county shall be paid to the county treasurer and on final settlement he shall pay all money in his hands, if any remain after the previous settlements, to the county treasurer, taking a receipt therefor.

These' provisions contemplate the most painstaking scrutiny of the official acts of the sheriff. Their plain purpose is to hold the sheriff to a strict accountability for all funds collected by him, and, further, to hold him accountable on all his official obligations, necessarily including the obligation not to retain for his compensation or that of his legally authorized deputies any sum in excess of that allowed by law. It has been held by many courts that fees received by a sheriff, as such, for services rendered within the limits of his county, in excess of the maximum compensation per annum allowed by law, shall be paid to the county treasurer for the use and benefit of the county. (Naylor v. Vermont Loan & Trust Co., 55 Pac. 297; Santa Clara County v. Branham, 20 Pac. 75; LaSalle County v.. Milligan, 32 N. E. 196; Cutts v. Rock County, 51 N. W. 881; People, etc. v. Foster, 23 N. E. 615; Board of Freeholders of Hudson County v. Kaiser, 69 Atlantic 25; Carroll County v. Durham, 76 N. E. 78; Board of Supervisors v. Allen, 2 N. E. 459; People v. Foster, 23 N. E. 615; Tyler County v. Long, Annt. Cases, 1905B, 809; Smith v. Commissioners of Kosciusko County, 82 N. E. 450; Starr v. Board of Commissioners, 79 N. E. 390.)

It may be admitted that most' of the decisions just cited are based on statutes fixing the sheriff's salary at a definite amount and requiring that it be paid from the county treasury, and that the statutes also directly

or inferentially provide that the fees of the office shall be accounted for and turned into the county treasury; but in many of those cases there is a distinct recognition of the rule that the sheriff is a county and not a state officer, and in discharging the duties imposed upon him by law he acts on behalf of the county and the fees collected, in excess of that allowed him under the law, belong, by reason of his official position, to the county. Thus it has been held that in receiving and depositing the state's money the sheriff discharges in behalf of the county an obligation resting upon it and that he should include such collections in his report to the county; also that he is accountable to the county for fees received by him from the state for conveying prisoners to the penitentiary. Where, therefore, a sheriff by virtue of his county office is required to perform services for litigants in the county and is allowed for those services compensation beyond what he is legally entitled to retain, it does not seem unreasonable on general principles to require that the surplus be turned over to the county as its property.

But the application of general rules is not necessary to sustain this view of the sheriff's responsibility, for, in our opinion, the statutes referred to clearly contemplate that the fees collected from litigants, in excess of what the sheriff is entitled to retain for salaries, belong to the county. We, therefore, hold that the commissions for the collection of county taxes and the fees received by the sheriff from litigants of the county, to the extent that they exceed in the aggregate what he is allowed to retain for salaries under section 246 of the Constitution, belong to the county.

Nor can we hold that the state is a necessary party to this suit or that there is a defect of parties plaintiff because a recovery of commissions on state taxes is sought. Wholly apart from the question as to whether the state or the county is entitled to commissions for the collection of state taxes paid to the sheriff, in excess of what he is legally entitled to retain as salaries for himself and his legally authorized deputies, the petition properly included averments as to the sums paid by the state, for if the state is willing to pay to appellee and to permit him to retain for the collection of its taxes sums sufficient to compensate him and his legally authorized deputies to the full extent of the law, he is en-

titled to retain none of the fees from litigants of the county and no commissions for the collection of county taxes, because having already been paid all that he can legally receive as his salary he is obviously entitled to collect and receive nothing from the county. Moreover, if it be conceded that the salaries of the sheriff and his deputies should be paid by the state and county in proportion to the respective services rendered and that the state is entitled to recover its ratable share of any excess of compensation illegally retained by the sheriff, still the payments made to the sheriff by the state for the years in controversy are proper subjects of inquiry in this proceeding and must be considered in determining what, if any, amount is recoverable by the county on account of commissions on county taxes and fees collected from litigants.

On these special demurrers it is not necessary to determine whether the excessive commissions paid the sheriff by the state, if any there are, belong to the state or to the county and we do not decide that question. But regardless of how that question may eventually be decided, if the county, or in this case appellant suing for the county, can recover from the sheriff and the members of the fiscal court any of the funds alleged in the petition to belong to the county, the special demurrers should not have been sustained; and this we hold can be done as to commissions for the collection of county taxes and fees received from litigants to the extent that they in the aggregate exceed what the sheriff is entitled to retain as salaries.

It follows from these considerations that the Fayette circuit court had jurisdiction of the subject matter of the action, that the plaintiff, suing for himself and Fayette county, possessed legal capacity to institute and prosecute this suit, and there was not a defect of parties plaintiff by reason of the fact that he alone instituted the proceedings for and on behalf of the other taxpayers of the county and the county itself. The special demurrers do not go to the question of the right of the plaintiff to recover as against the surety company. Were that question presented it could not be determined since the petition does not show whether the commissions and fees, alleged to be illegally held by appellee, were merely retained by him from funds in his hands or were paid to him on his making the settlements required by law.

The judgment in each case is reversed and the causes are remanded for further proceedings not inconsistent with this opinion.